### EXECUTOR AND HEIRS OF WILLIAM CAMERON, DECEASED, V. STATE OF TEXAS.

#### No. 1111.  Decided May 29, 1902.

**Greer County—Grant of School Land—Rights of Purchaser.**

Greer County, while recognized by the Legislature as a part of the territory of the State of Texas and a county of the State, was entitled to receive a grant of land for school purposes and to sell and convey the same; and the rights of a purchaser of such school land from the county were not affected by the subsequent decision of the Supreme Court of the United States holding that Greer County was never Texas territory. (Pp. 549-552.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The State sued to recover from Greer County and the executor, etc., of Cameron, lands granted to that county in aid of public schools. Plaintiff had judgment against the executor, etc., of Cameron, who had survived; and this being affirmed on appeal, the executor, heirs, and devisees of Cameron obtained writ of error.

*H. N. Atkinson,* for plaintiffs in error.—The court erred in holding void the patents to the lands in controversy herein when the undisputed evidence showed that at the time the patents were issued, the territory known as Greer county had been for nearly forty years de facto a part of the State of Texas, and had been recognized as such by more than thirty general laws of said State, and had also been recognized as a part of said State by the legislative, executive, and judicial departments thereof. Gullett v. O'Connor, 54 Texas, 416; League v. Rogan, 59 Texas, 428; De Court v. Sproul, 66 Texas, 368; Johnson v. Timmons, 50 Texas, 537; Shields v. Hunt, 45 Texas, 427.

The acts of a government de facto are as valid as those of a government de jure, and private rights acquired thereunder will not be can-

celed or set aside upon the termination of the de facto government. Day etc., Co. v. State, 68 Texas, 539; Trevino v. Fernandez, 13 Texas, 630; Phillips v. Payne, 92 U. S., 130; Martin v. Weyman, 26 Texas, 465; Sprott v. United States, 20 Wall., 459; Texas v. White, 7 Wall., 700.

In cases involving the action of the political department of the government, the judiciary is bound by such action. Phillips v. Payne, 92 U. S., 130; Williams v. Insurance Co., 13 Pet., 420; Garcia v. Lee, 12 Pet., 511; Kennett v. Chambers, 14 How., 38.

No State can do any act impairing the obligation of a contract, and any action of a State, either through its legislature or by its courts, which impairs the obligation of a contract, is null and void. Fletcher v. Peck, 6 Cranch, 87-148; Trust Co. v. Baltimore, 64 Fed. Rep., 153; College v. Woodward, 4 Wheat., 518; Chicago v. Sheldon, 9 Wall., 50.

A contract entered into between a State and a municipal corporation or between a State and an individual is as fully protected by the constitutional provision against impairing the obligations of contracts as a contract between two individuals. Fletcher v. Peck, 6 Cranch, 87; Bank v. Billings, 4 Pet., 514; Myers v. English, 9 Cal., 341; Winters v. Jones, 10 Ga., 190.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant, for the State. The patents issued to Greer County for the four leagues of school land, not being authorized by law, are void. Mason v. Russell, 1 Texas, 728; Com. v. Smith, 5 Texas, 479; State v. Delesdenier, 7 Texas, 109; Hancock v. McKinney, 7 Texas, 440; Sherwood v. Fleming, 25 Texas Supp., 427; Gunter & Munsen v. Meade & Bomar, 78 Texas, 638; Todd v. Fisher & Miller, 26 Texas, 242; Railway v. Randolph, 24 Texas, 332.

If not absolutely void, in the strict meaning of that term, the patents to Greer County were voidable at the suit of the State, and this being a suit by the State to cancel the patents, it can make no difference whether the patents were void or only voidable at the suit of the State.

There is no question in this case of the validity of the acts of a de facto as distinguished from a de jure government.

This is not a case involving the action of the political department of the government, but of the legislative department.

The issuance of the patents to Greer County was unauthorizd by law, and did not create a contract between the State of Texas and the grantee in such patents.

The State is not estopped by the unauthorized acts of her executive officers. Day, etc., Co. v. State, 68 Texas, 553; Saunders v. Hart, 57 Texas, 10; Stoddard v. Chambers, 2 How., 284; United States v. Beebe, 127 U. S., 338; United States v. Insley, 130 U. S., 263; State v. Bevers, 86 N. C., 588; People v. Brown, 67 Ill., 435; Taylor v. Shufford, 4 Hawk., 116.

No one can be an innocent purchaser under a void patent.

The patents to Greer County having been executed in contemplation of and with reference to a supposed actual state of things, and it having

turned out that, by mutual mistake of the parties, the supposed actual state of things does not in fact exist, the consideration for the agreement fails, and the agreement is void, as well in law as in equity.    Kerr on Fraud and Mistake, 430 ; 2 Pom. Eq. Jur., secs. 855, 856, and note, p. 321, also note (I), p. 323.

This case is submitted upon the part of appellee upon the following propositions:

(1)    The act of the Legislature of the State of Texas, February 8, 1860, creating Greer County (Acts of Eighth Legislature, page 138), was unconstitutional.    It follows, as a necessary consequence, that the attempted organization of the county in 1886 was null and void, and that all acts of the Legislature dealing with Greer County, as a county of Texas, were unconstitutional, null and void.    The number of these acts adds no force to defendant's contention.    If one of them is void they are all void.

(2)    The legislation creating Greer County, and dealing with it as a county of Texas, being in violation of the Constitution, the general laws granting four leagues of land to each county of the State, for free school purposes, and authorizing the issuance of patents to such counties therefor, did not authorize the issuance of patents to Greer County for such lands.

(3)    The patents issued to Greer County, being issued without authority, were void.

(4)    The patents being void and the State never having parted with its title to the four leagues of land sued for, is not estopped by the unauthorized acts of her executive officers in issuing the patents.    Nor is the State estopped by the unconstitutional acts of the Legislature in creating Greer County, and in otherwise dealing with the same as a county of Texas.

(5)    The patents to Greer County being void, neither the defendant, Greer County, Oklahoma Territory, who shows no title at all, nor the defendants, the heirs and executors of William Cameron, who claim by conveyance from Greer County, are entitled to be protected in their titles as innocent purchasers for value and without notice.    A purchaser who holds under a void patent can not under any circumstances claim to be protected in his title, as against the State, as an innocent purchaser.

(6)    If the defendants Cameron could be held to be innocent purchasers, and as such entitled to be protected, they could only be protected and their titles saved to the amount paid by them in cash (or merchandise) after the execution of the deed to William Cameron by Strain & Swinburne.    To the extent of that portion of the consideration which was based upon a pre-existing indebtedness from Strain & Swinburne to William Cameron, William Cameron was not a purchaser for value. (The entire consideration paid by Strain & Swinburne to Greer County being a pre-existing indebtedness of Greer County in the shape of bonds, which bonds were null and void, the attempted creation of the county

being void, it can not be said that Strain & Swinburne were innocent purchasers for value.)

It must be assumed that the territory embraced in Greer County, Texas, as created by the Act of February 8, 1860, was at the time of the passage of the act entirely without the territory of the State of Texas. By the decision of the Supreme Court of the United States in the case of United States v. State of Texas, 162 United States, 1, this question is res adjudicata. The judgment in that case is binding on all citizens of the State of Texas or the United States. It follows as an inevitable legal consequence that that territory was as much beyond the limits of the State of Texas at the date of the passage of the act creating Greer County out of that territory, as it is now. The decision and decree of the Supreme Court of the United States did not have the effect of placing this territory outside of the limits of Texas, or fixing its status, as to this point, from the date of the decree, but had the effect of establishing the fact, which can not be disputed by any person or power, that the territory was never at any time a part of the territory of the State of Texas. We think this may be taken as undisputed as a basis for further argument and reasoning.

Could it be said that the Legislature would have, under the Constitution, power now to pass an act creating that territory into a county of Texas? Unquestionably not. Then what power did the Legislature have to do so in 1860, its constitutional power and authority being the same then as now, no greater, and the status of the territory, as being without the limits of the State of Texas, and forming no part of her territory, being the same then as now? By no sort of reasoning can it be shown that the Act of 1860, creating Greer County was constitutional then, if such an act would be unconstitutional now. The power of the Legislature to create this territory into a county of Texas, and to otherwise deal with it as such county, depended upon the fact of such territory being a part of the State, and not upon a claim that it was such part, no matter in how much good faith made, how long persisted in, nor how universally believed in by her citizens. The argument can not be used here that any acquiescence of the United States in the exercise of jurisdiction by Texas, or failure by her to assert aggressively her own rights, affects the status of the territory. These matters were all submitted to and adjudicated by the Supreme Court.

If an act of the Legislature now creating a county out of this territory would be unconstitutional because this territory is not a part of the territory of Texas, such an act in 1860 was unconstitutional because this territory was not at that date a part of the territory of Texas. It strikes us that a bare statement of this proposition shows it to be unanswerable.

We shall assume, without citation of authority, that the Legislature of the State has never had, under any Constitution, power to create a county out of territory ouside the limits of the State, nor could such power have been exercised under the Constitution. It would be inherently beyond the power of the government, no matter how sought to be

exercised. The act creating and providing for the organization of Greer County being unconstitutional and void, the patents issued for the lands sued for were void. These patents purport on their face to be issued by virtue of the provisions of the Act of April 7, 1883 (Acts of 1883, page 45). Section 1 of that act provides that the 325 leagues of land surveyed under the provisions of the Act of March 26, 1881, for the benefit of unorganized counties, shall be set apart and constitute a reservation, out of which each of the unorganized counties of this State, as it may be organized, shall be entitled to and receive four leagues of school land. Section 2 provides, * * * "and as each of the unorganized counties in this State shall be organized, such county shall be entitled to the first four leagues out of the reservation," etc., and provides further that upon payment of certain charges the Commissioner of the General Land Office is required to issue patent to such county.

This, then, is the authority upon which the commissioner acted in issuing these patents. Clearly it did not authorize the issuance of the patents, unless Greer County was at the time an organized county in this State. The validity of its organization (which was provided for in the act creating it) depends upon the validity of its creation. It could not be legally organized unless it had been legally created. So that the whole case of the validity of the patents comes inevitably to rest upon the validity of the Act of 1860 creating Greer County.

If it can be said, that up to the time of the decision of the Supreme Court of the United States, Greer County was such a corporation de jure or de facto as to authorize the issuance of these patents, then it must follow that it had at the same time authority to issue the bonds given to Strain & Swinburne for building a jail, and that these bonds are legally enforcible obligations. Against whom could they be enforced? Can it be said that they could be enforced in such case against Greer County, Oklahoma Territory? Indeed, if Greer County, the grantee of the patents, was ever a legally created and organized county, why is it not such today? What has occurred to change its status in this regard? It is unnecessary to pursue this argument further.

GAINES, CHIEF JUSTICE.—This suit was brought by the State of Texas to recover of Greer County, in the Territory of Oklahoma, and of the executor, devisees, and heirs of William Cameron, deceased, the four leagues of land which were patented to Greer County while that county was treated as a part of Texas. The executors, devisees, and heirs of Cameron answered asserting title to 10,476 acres of the land sued for, giving a specific description thereof, and disclaiming as to the remainder. Greer County, Oklahoma, on the other hand, disclaimed as to all the land claimed by its codefendants, and claimed title to that portion thereof to which they filed a disclaimer. A severance was granted and the suit, as between the State and Cameron's executor, devisees, and heirs, resulting in a judgment in its favor. This judgment was affirmed

by the Court of Civil Appeals. The case comes before us upon a writ of error sued out for the purpose of reversing that judgment.

We will state briefly the facts which gave rise to the controversy: Greer County, Oklahoma, is a body of land lying between the North fork and the South fork of Red River and the 100th meridian of longitude. There was a dispute between the State and the United States as to which fork of the river was the true boundary of the State—the United States claiming the South fork and the State the North fork as such boundary. The controversy grew out of the construction of the treaty of 1819 between the United States and Spain. If the South fork was the Red River proper, then the territory in question belonged to the United States. If the North fork was the river called for, then it was a part of Texas.

The State, ever since its annexation to the United States, has claimed the territory in dispute, and the Legislature as early as 1860 asserted its authority over it by creating it a county, in the name of Greer County. It was continuously so recognized by that body until, in the year 1895, in a suit to determine the question of boundary, instituted in the Supreme Court of the United States, in pursuance of an act of Congress, the disputed territory was adjudged to be a part of the United States, and not to belong to Texas. During all this time the State exercised all the sovereign powers of a State of the Union over the land in dispute—accorded to its inhabitants the rights of citizenship in the State and subjected them to all the burdens of the State government. While it was treated as a part of the State, it was organized as a county; sent its representatives to the State Legislature, was incorporated in a congressional district of the State, was placed in a judicial district, and such courts were established and held therein as were authorized by the Constitution to be held in the several counties of the State. In short, for all intents and purposes, it was recognized, considered, and treated as an organized county of the State.

The status of the territory, as recognized by the lawmaking powers of the State, was acquiesced in by the United States until the act of Congress made provision for the settlement of the controversy as a judicial question, and this status continued until the suit was decided against the State and the territory thereby made fully subject to the sovereignty of the General Government.

In 1883 a law was passed by the Legislature which granted four leagues of land, for school purposes, to such of the counties of the State as had not secured a similar grant under previous laws; and it was made the duty of the Commissioner of the General Land Office to issue certificates therefor to be located upon any part of the public domain not otherwise appropriated. A certificate was issued to Greer County under this act and was located upon the lands in controversy in this suit. In pursuance of such location a patent was issued to the county. Under the authority conferred upon the commissioners court of the county by the general laws of the State, the county sold, and on January 12, 1888;

the county judge conveyed so much of the lands so located as is claimed by the plaintiffs in this suit, to Strain & Swinburne, who in turn, on the 17th day of the same month, sold and conveyed the same to William. Cameron.

Now it is claimed in behalf of the State that since it was adjudicated in the Supreme Court of the United States that the territory in controversy was never a part of Texas, it was never a county of Texas, and that therefore no authority existed for issuing the certificate for the four leagues of land under the Act of 1883. It is clear that when the suit was determined against the State, Greer County ceased to be a county of the State of Texas, either de facto or de jure.

But from the fact that it was adjudged that the territory was not included within the boundaries of the State of Texas, and that it was never rightfully subjected to the political authority of the State and made a county thereof, it does not follow that the legislation of the State, in reference to the de facto county, and the acts of its officers in pursuance of the authority conferred by such legislation, are of no effect. In the case of Harold v. Arrington, 64 Texas, 233, it was sought to restrain the collection of taxes assessed in the year 1882, upon certain horses and cattle then in Greer County, and among the grounds urged in support of the injunction was, that the county was not a part of the State. In disposing of the question, this court said: "Whether or not Greer County is a part of the State of Texas depends upon where the northern boundary line of our State, dividing it from the Indian Territory, should be located. This is a question to be settled by the political and not the judicial department of our State government. It is judicially known to us that the political authority has always claimed the territory composing Greer County as part of the domain of our State, and has exercised acts of control over it; such as organizing it into a county and attaching it to another of our counties for judicial purposes, etc. We can not undertake to limit the jurisdiction thus recognized and asserted by the political department, and until that department ceases to exercise such authority, we must treat this county as subject to the jurisdiction of the State of Texas." Citing Bedel v. Loomis, 11 N. H., 15; State v. Dunwell, 3 R. I., 127; Guadalupe Co. v. Wilson Co., 58 Texas, 228; Foster v. Neilson, 2 Pet., 254; United States v. Arredondo, 6 Pet., 691.

We are of opinion that if the action of the Legislature in treating the territory in question as part of the State was conclusive upon its courts, then, it is equally conclusive now; and that the legislative determination of boundary settles the matter for the courts whenever the controversy arises. If after Greer County was organized it had applied to the Commissioner of the General Land Office for the certificates authorized by the Act of 1883, and if he had refused to issue them, or if after the lands had been surveyed and the certificates and the field notes returned to the General Land Office he had refused to issue the patent, a suit had been brought to compel the performance of his duty, and he had urged as his

only defense that Greer County was not a part of the State of Texas, the answer of the court would have been as it was in Harrold v. Arrington, supra, that the question was one solely for the political department of the State government; that is to say, for the State Legislature, and that its determination was conclusive upon the courts of the State. Clearly then, when the lands were located and surveyed for Greer County, and when the patents issued, it had the capacity to take, and we think it equally clear that having the capacity to take, it had, so long as the Legislature recognized it as a county of the State, the power to convey. The courts, at the time the territory was treated as a county of the State, being bound by the action of the Legislature, it seems to us that the courts are in like manner bound now as to all transactions which have resulted as a consequence of that action.

Unless it can be held that the plaintiffs in error are affected by a judgment to which neither they were parties nor William Cameron, under whom they claim, was a party, their rights are the same after that judgment as they were before it was rendered. The only use that the State in this action can make of the judgment in favor of the United States against it, is to offer such judgment as evidence to show that the territory known as Greer County never was a part of the domain of Texas. The objection to the evidence is that the Legislature of the State determined that it was a county of the State, and that such determination precludes any inquiry into the matter by the courts.

The title of plaintiffs in error is not different from what it would have been had Greer County been indisputably a part of the State from its annexation until 1895, and had it at the latter date been ceded to the United States.

The four leagues of land having been conveyed to Greer County in trust, for the benefit of the public schools within the county, as a county of the State, and the county having ceased to be a county of the State, whether its successor, Greer County in the Territory of Oklahoma, can hold such of the lands as are not conveyed, is a different question. It is not before us in this case.

For the reasons given, we are of the opinion that the plaintiffs in error have title to the lands in controversy, and therefore the judgment of the District Court and that of the Court of Civil Appeals is reversed and judgment is here rendered in their favor.

*Reversed and rendered.*