## GREER COUNTY v. STATE OF TEXAS.

Decided January 14, 1903.

**1.—School Land—Greer County—Trust—Cancellation of Patent.**

The State of Texas, after surrendering to the United States jurisdiction over the territory known as Greer County, in deference to the judgment holding it to be a part of the territory of the United States, and not of Texas, could maintain suit to cancel the patents for and recover land granted as school land to that county while recognized as a part of the State, and still held by it. The grant being in trust for the support of public schools of Texas in such county, became incapable of execution when the land passed beyond the jurisdiction of Texas.

**2.—Same—Case Distinguished.**

The decision in Cameron's Heirs v. State, 95 Texas, 545, is distinguishable from the present by the fact that the land there involved was lawfully sold by Greer County while it was still recognized by the State as a county of Texas.

Error from the District Court of Travis. Tried below before Hon. R. E. Brooks.

*Clark & Bolinger* and *H. N. Atkinson,* for plaintiff in error.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant Attorney-General, for defendant in error.

KEY, ASSOCIATE JUSTICE.—This is a suit by the State to recover from Greer County, in Oklahoma Territory, four leagues of land, and from a judgment in favor of the State, Greer County has appealed.

The case was submitted in the court below, and is also submitted here on the following agreed facts:

"1. The land sued for comprises four leagues in Hockley and Cochran Counties, and was granted to Greer County as an organized county of the State of Texas, under the provisions of the General Laws of the State, granting four leagues of land to each county of the State for school purposes.

"2. Patents (five in number) issued to Greer County in July 18, 1887, being Nos. 519, 520, 521, 522 and 523, vol. 24. The original or certified copies of such patents may be introduced in evidence by either party, and for any purpose deemed advisable.

"3. Seven thousand two hundred and thirty-six acres of said land is now claimed by Greer County, Oklahoma Territory, under and by virtue of said patents to Greer County, Texas; said 7236 acres is described as follows: 7236 acres of land off the north end of the Greer County school land leagues; consisting of all that part (the south part) of league No. 109, which is patented to Greer County by patent No. 523, vol. 24, consisting of 13,354,549 square varas of land, and all of league No. 88 of 4428 acres, and the balance of said 7236 acres off the north side of league No. 87 as follows: Beginning at the N. E. corner of said league 87; thence south 500 varas; thence west 5000 varas; thence

north 500 varas; thence east 5000 varas to the place of beginning, situated in Hockley and Cochran Counties, Texas.

"4. The balance of said four leagues is claimed by the heirs and devisees of William Cameron, deceased, under and by virtue of a certain deed of conveyance thereof to William Cameron from Strain & Swinburne, dated January 17, 1888. Strain & Swinburne claimed title thereto under and by virtue of a deed of conveyance to them, from and on the part of Greer County, Texas, by the county judge of said Greer County, Texas, dated January 12, 1888. The land referred to is described as follows:

"Ten thousand four hundred and seventy-six acres of land off of the south end of the Greer County school land leagues, as follows: Beginning at the S. E. corner of that portion of league No. 85, which is patented to Greer County by patent No. 520, vol. 24; thence N. at 2329½ varas the N. E. corner of said league No. 85, at 7329½ varas the N. E. corner of league No. 86, at 11,829 45-100 varas a point on the east line of league No. 87; thence W. 5000 varas; thence south 11,829 45-100 varas; thence east 5000 varas to the place of beginning, so as to include all that part of league No. 85 that is patented to Greer County, all of league No. 86 and the balance of the 11,476 acres out of the south side of league No. 87, situated in Hockley and Cochran counties, Texas.

"5. The defendant Greer County is now an organized County of Oklahoma Territory, one of the Territories of the United States, and comprises the same territory which was at one time organized under the laws of the State of Texas, as Greer County, Texas, to which the aforesaid four leagues of land were patented.

"6. William Cameron, the grantee in the above described deed of conveyance, died testate on the 6th day of February, 1898. By the terms of his will, which was duly probated in the probate court of McLennan County, Texas, the other defendants were made executors of his will and devisees of his estate, and are also his heirs at law, as set out in plaintiff's amended petition, and as such they claim title to the aforesaid land.

"7. The territory now organized as Greer County, Oklahoma Territory, was, up to the date hereinafter set out, claimed by the State of Texas to be a part of her territory, and up to said date jurisdiction and control was claimed and exercised over the same by the State of Texas. The government of the United States did not, except in so far as was done by the act making Greer County a part of the northern judicial district of Texas, as hereinafter shown, concede said claim, but during all of said time claimed said territory as a portion of her own territory outside of the limits of the State of Texas, and the legislative and executive departments of the said State had full knowledge of said claim prior to the issuance of the patents mentioned herein. Attempts were made from time to time to settle the dispute between the State of

Texas and the United States as to the ownership of this territory, without success.

"8. Greer County, comprising the aforesaid territory, was created by the Legislature of the State of Texas, by the Act of February 8, 1860, and was organized as a county under the provisions of said act on the —— day of ————, A. D. 1886.

"9. By an act of the Congress of the United States of May 2, 1890, the Attorney-General of the United States was directed to commence, in the name and on behalf of the United States, and prosecute to final determination, a proper suit in equity in the Supreme Court of the United States, against the State of Texas, setting forth the title and claim of the United States to the tract of lands lying between the south and north forks of Red River, where the Indian Territory and the State of Texas adjoin, east of the 100th meridian of longitude, and claimed by the State of Texas as within its boundary and a part of its land, and designated on its maps as Greer County.

"Under the authority of this act, a suit was instituted in the Supreme Court of the United States, styled the United States v. the State of Texas, in which the State of Texas appeared by her Attorney-General and other counsel.

"10. At the October term, 1895, a decree was rendered in said cause as follows:

"'This cause having been submitted upon the pleadings, proofs and exhibits, and the court being fully advised, it is ordered, adjudged and decreed that the territory east of the 100th meridian of longitude, west and south of the river now known as the North Fork of Red River, and north of a line following westward, as prescribed by the treaty of 1819, between the United States and Spain, the course, and along the south bank both of Red River and of the river known as the Prairie Dog Town Fork, or South Fork of Red River, until such line meets the 100th meridian of longitude, which territory is sometimes called Greer County, constitutes no part of the territory properly included within or rightfully belonging to Texas at the time of the admission of that State into the Union, and is not within the limits nor under the jurisdiction of that State, but is subject to the exclusive jurisdiction of the United States of America. Each party will pay its own costs.'

"After this decree was rendered, the State of Texas exercised no further control or jurisdiction of said territory, and the same was afterwards organized into Greer County, Oklahoma Territory, and as a part of said territory. The territory described in said decree is the same as was embraced in Greer County, Texas, as created and organized as aforesaid.

"The recitals in the report of said cause of United States v. Texas, as reported in volume 162 of United States Supreme Court reports, and the printed record in said cause, may be used as full evidence of the facts therein stated, as to the institution of the suit, the appearance

and pleadings of the parties and the decree of the court, without the necessity of producing certified copies thereof from the records of said court."

In addition to the foregoing, the trial judge made a finding of fact to the effect that the patents referred to for the four leagues of land purport on their faces to have been issued by virtue of an act of the Legislature of the State of Texas, approved April 7, 1883. Chap. 55, Gen. Laws, 1883.

*Opinion.*—In addition to the usual averments in trespass to try title the State averred in its petition that the defendant claimed title to the land by virtue of the patents issued by the Governor of Texas, July 18, 1887, to Greer County, Texas, comprising the same territory as is embraced in the defendant Greer County, Oklahoma Territory; that the patents were issued without legal authority, and prayed that the same be canceled and held for naught.

The Supreme Court of the United States, in the case referred to in the agreed statement, decided that the territory embraced in what was originally considered and treated by the Legislature and other officers of Texas as a part of the State, was in fact within the Territory of Oklahoma, and was no part of the State of Texas. This being true, if it be conceded that the patents issued by the Governor of Texas vested title in a de facto county, and that the defendant in this case, Greer County, a political division of Oklahoma Territory, has succeeded to the legal title granted by the patents, still, as the lands referred to were granted for public school purposes, and were held in trust by Greer County for such purposes, and as Greer County will not and can not use them for such purposes, within the limits of Texas, we are of the opinion that the State was entitled to have the patents canceled and recover the land.

This case is distinguishable from Cameron v. State, 95 Texas, 545. The land involved in that case had been sold by Greer County; and, as between the State and the vendees of the county, it was held by the Supreme Court that the patents vested title in Greer County, and that Greer County had the power to convey the land to the purchasers. But the court did not hold that if the land in that case had not been sold by the county, and it had become impossible for the county to execute the trust, that the State could not recover the trust fund.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.