# GREER COUNTY, OKLAHOMA TERRITORY, v. TEXAS.

ERROR TO THE COURT OF CIVIL APPEALS' FOR THE THIRD SU-
PREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 160. Submitted March 6, 1905.—Decided March 20, 1905.

The decision in *United States* v. *Texas*, 162 U. S. 1, that Greer County was not within the boundaries of Texas did not effect a cession of the territory included in the county from Texas to the United States or amount to a transfer of sovereignty, but was simply a revelation that such territory belonged to the United States. Greer County, Oklahoma, as created after that decison by the act of 1896, 29 Stat. 113, is a corporation created by a different sovereignty from that which purported to create Greer County, Texas, and as such is technically a different person, and does not succeed to land situated elsewhere in Texas granted by that State prior to such decision for school purposes to Greer County, Texas.

THE facts are stated in the opinion.

*Mr. George Clark, Mr. H. N. Atkinson* and *Mr. D. C. Bolinger* for plaintiff in error:

When a grant is made by a State to an individual or municipal corporation, and the grant is accepted, the contract is complete; and any action by the State through either its legislative, executive or judicial department, which tends to impair the obligation of said contract, is in violation of Sec. 10 of Art. I, of the Constitution of the United States. *Fletcher* v. *Peck*, 6 Cranch, 87, 148; *Trust Co.* v. *Baltimore*, 64 Fed. Rep. 153; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Chicago* v. *Sheldon*, 9 Wall. 50.

When the land in controversy was patented to Greer County, as a part of Texas, said county took title to the land. *Cameron* v. *Texas*, 95 Texas, 545.

This decision shows a valid grant from the State of Texas

to Greer County, and that Greer County was not affected by the result of the litigation between the United States and the State of Texas. A grant is a contract, and any attempt by the State of Texas to revoke its grant to Greer County, is, under the agreed facts of this case, an attempt to impair the obligation of the contract evidenced by the grant.

The grants evidenced by the patents issued by the State of Texas vested title in Greer County, which title so vested was beyond recall by the State through any department of its government, executive, legislative or judicial. Constitution of Texas, art. 7, § 6; *Cameron* v. *State*, 95 Texas, 545; *Milam County* v. *Bateman*, 54 Texas, 166; *Palo Pinto County* v. *Gano*, 60 Texas, 251.

Even though the State itself may have donated the property, it thereby becomes such a vested right as will be protected. Wade on Retroactive Laws, 56; *Grogan* v. *San Francisco*, 18 California, 590. Rights of private property are never affected either by cession, conquest, change of sovereignty or otherwise, and the change in such sovereignty never divests rights of property. The decision of this court in 1895, that Greer County did not belong to Texas, but was a part of the domain of the United States, can therefore have no effect upon the rights of property or grants hitherto made to Greer County by the State of Texas. *United States* v. *Roselius*, 15 How. 36; *Townsend* v. *Greely*, 5 Wall. 326; *Dent* v. *Emmeger*, 14 Wall. 308; *Hardy* v. *De Leon*, 5 Texas, 234; *Musquez* v. *Blake*, 24 Texas, 466; *Kilpatrick* v. *Sisneros*, 23 Texas, 124; *Maxey* v. *O'Connor*, 23 Texas, 242; *United States* v. *Percheman*, 7 Pet. 51; *Strother* v. *Lucas*, 12 Pet. 410; *Airhart* v. *Massieu*, 98 U. S. 496.

When the State enters her courts as a suitor, the same law applies to it as to citizens. The undisputed evidence demonstrates that the State of Texas, through all its departments, executive, legislative and judicial, at the time the lands were granted to Greer County, was fully aware of the controversy then existing between the United States and the State of

Texas as to the ownership of said county, and perfected said grants to Greer County with such knowledge. And where the means of inquiry or knowledge are equally open to both parties, if a mistake occurs without fraud or falsehood, neither party is entitled to relief. *Fristoe* v. *Blum*, 92 Texas, 80; *Railway Co.* v. *Van Alstyne*, 56 Texas, 448; *Galveston County* v. *Gorham*, 49 Texas, 303; *Gilliam* v. *Alford*, 69 Texas, 271; *Farnsworth* v. *Duffner*, 142 U. S. 43; *Baltzer* v. *Railway Co.*, 115 U. S. 634; *May* v. *Le Claire*, 11 Wall. 217; Adams Eq., 7th ed., 166 *et seq.;* Fronb. Eq. 116.

The grants to Greer County by the State, being in trust for public school purposes, the children of that county became the donees of the charity and their rights and interests cannot be affected by subsequent action on the part of the State as donor. The fact that Texas has lost her dominion over Greer County since the grants were made, cannot enter into the question, as the State thereby is remitted to her action in the proper tribunals, if so disposed, to prevent or correct a perversion or waste of the funds. Property given in charity is always preserved by chancery, and even in cases where the use fails because illegal, the property does not revert, but must be applied as near as practicable to the original intention. *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Fontain* v. *Ravenel*, 17 How. 384; *Russell* v. *Allen*, 107 U. S. 167; *Girard* v. *Philadelphia*, 7 Wall. 15; *Jones* v. *Haversham*, 107 U. S. 189; *Mormon Church* v. *United States*, 136 U. S. 51; *Croxall* v. *Shererd*, 5 Wall. 281.

Counties may hold property in trust for schools. 1 Beach on Trusts, § 12, p. 19; *Parish* v. *Cole*, 3 Pick. 232; *Perin* v. *Cary*, 24 How. 575; 2 Perry on Trusts, § 707; *Attorney General* v. *Hellis*, 2 Simmons & St. Ch. Rep. 77, and the grant was a grant for charitable use and no matter if Greer County, Texas, ceased to exist, and no matter whether Greer County, Oklahoma Territory, is its natural or legal successor, or otherwise, it cannot affect the question; in either or both events a court of chancery may take charge of the funds and administer them

as near as may be possible according to the intention of the grantor.

Texas has been reimbursed for these lands. See act of Congress, April 27, 1904; Doc. & R. 571, Part II, 57th Cong., 2d Sess., from which it appears that the land sued for in this case, to-wit: 7,236 acres, was sold by Greer County when she was a part of Texas, but that afterwards Greer County by foreclosure of the vendor's lien bought in this 7,236 acres again and title was revested in Greer County. The balance of the land, 10,476 acres, became the property of Cameron and was involved in the suit decided adversely to the State in *Cameron* v. *State*, 95 Texas, 545. The Supreme Court of Texas holding in that case that the patents were valid and passed the title to Greer County, and that the Camerons held superior title to the State.

That the State of Texas has been reimbursed not only for every expenditure made by her in Greer County during the existence of her claim to that county, but had been even reimbursed by the Government for the 10,476 acres of these lands owned by the Camerons; and it was, at least, inferable that in case she does not prevail in her suit in this cause the Government will be equally beneficent and liberal and reimburse her, if she asks for it, for the value of these lands.

The court would take judicial notice of the public records of the executive department. *N. Y. Indians* v. *United States*, 170 U. S. 22, 42; *Heath* v. *Wallace*, 138 U. S. 584; *Underhill* v. *Fernandez*, 168 U. S. 253; *The Paquette Habana*, 175 U. S. 700; *Jones* v. *United States*, 137 U. S. 216; *Kennett* v. *Chambers*, 14 How. 47; *United States* v. *Leschmaker*, 22 How. 405; *Romero* v. *United States*, 1 Wall. 742; *The Delaware*, 161 U. S. 473.

*Mr. C. K. Bell*, former Attorney General of the State of Texas, with whom *Mr. R. V. Davidson*, Attorney General of the State of Texas, *Mr. C. A. Culberson* and *Mr. T. S. Reese* were on the brief, for defendant in error:

Whatever contract there was by virtue of the patents, was

between the State of Texas and Greer County, Texas, a legal subdivision of the State, now nonexistent, and if there has been any impairment of this contract, it does not in any way concern plaintiff in error, or affect its rights. But there has been in no sense an impairment of the obligation of this contract by the decisions of the Texas courts, and finally neither in the judgment of the state court nor in the assignments of error in this court, nor in the brief of counsel, is there any reference to any *legislation* with reference to the matter. The case was decided upon the general principles of law governing the case and applicable to the facts presented. The provisions of § 10, Art. I, Constitution United States, do not apply. *Knox* v. *Exchange Bank*, 12 Wall. 379; *Central Land Co.* v. *Laidley*, 159 U. S. 103, 109.

The effect of the judgment of the state court was in no sense the taking of private property for public use without making compensation, as charged in the fourth assignment of error, even if, as is assumed by plaintiff in error, there were any inhibition in the Federal Constitution, of such action by the State.

Greer County, Texas, the grantee in the patents, was a political subdivision and a *de facto* municipal corporation of the State of Texas, and its existence as such was terminated by the decision of this court in *United States* v. *Texas*, 162 U. S. 1; Const., Texas, Art. 9, § 1; Art. 11, § 1; Rev. Stat. Texas, 1895, Arts. 756, 789.

The grant of four leagues of land for school purposes was not to the territory embraced within the limits of Greer County, nor to the inhabitants thereof, but to Greer County as a political subdivision and municipal corporation of the State of Texas, in trust for the benefit of the public free schools of the county as such, and to be administered under the general control and supervision of the legislature. Constitution, 1875, Art. 7, § 6; act January 26, 1839; act February 5, 1840; act January 16, 1850; act March 13, 1875; act April 7, 1883, Rev. Stat., 1895, Arts. 4280, 4281. This last act is the one

upon which the patents were issued, as stated in the face of the patents, and authorizes the issuance of patents to each county *of the State*, as it is organized, out of the 325 leagues surveyed for that purpose under the act of March 16, 1882. Revised Statutes, 1895, Arts. 3902, 4270, 4271, 4272; *Palo Pinto Co.* v. *Gano*, 60 Texas, 251; *Worley* v. *State*, 48 Texas, 12.

Upon the decision of this court in *United States* v. *Texas*, 162 U. S. 1, and the surrender by the political department of the state government of all claim to or right of control over, the territory formerly embraced in the geographical limits of Greer County, Texas, the title to the lands involved in this suit was extinguished, and the lands reverted to the State. 1 Dillon Mun. Corp. § 169*a*; *Merriwether* v. *Garrett*, 102 U. S. 472, 512; *Bass* v. *F₊ tleroy*, 11 Texas, 698, 706.

The grant was not a contract within the meaning of § 10, Art. I, Const. United States. *East Hartford* v. *Hartford Bridge Co.*, 10 How. 491; *Newton* v. *Commissioner*, 100 U. S. 566.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the State of Texas to recover certain lands in Hockley and Cochran Counties, Texas, for which patents were issued to Greer County, Texas, on July 18, 1887, under color of the general laws of the State granting four leagues of land to each county of the State for school purposes. Texas Gen. Laws, 1883, c. 55. Greer County, Texas, was created by an act of February 8, 1860, and was organized as a county in 1886. In March, 1896, it was decided by this court that the territory known as Greer County belonged to the United States and not to the State of Texas. *United States* v. *Texas*, 162 U. S. 1. Thereupon by act of Congress of May 4, 1896, c. 155, the same territory was organized as Greer County, Oklahoma, the present defendant, plaintiff in error. 29 Stat. 113. On April 13, 1897, Texas passed a law purporting to set aside the land in controversy for the support of schools in

Texas and directing proceedings to recover the land against all adverse claims. Gen. Laws, 1897, c. 72. Then this suit was brought. The defendant, among other things, set up that the State was attempting to impair the obligation of its grant.

The case was heard on agreed facts and the State District Court decided in favor of the State on the ground that the general laws of Texas authorized patents to be issued to the counties of Texas only, and that therefore the patents were void. Another suit was brought against a purchaser from the *de facto* Texas county of a part of the land, in which the Supreme Court of the State decided that the purchaser got a good title, holding that the action of the state legislature still was conclusive on the court notwithstanding the decision in *United States* v. *Texas; Cameron* v. *State,* 95 Texas, 545. The present cause was taken to the Court of Civil Appeals, which distinguished *Cameron* v. *State,* and affirmed the judgment on the different ground that the grant was for public school purposes within the State of Texas, and, as the defendant could not and would not use the land for such purposes, the State was entitled to have the patents cancelled and to recover the land. 31 Texas Civ. App. 223. Then a writ of error was obtained from this court to enforce the constitutional right alleged by the defendant as stated above.

The decisions below and in *Cameron* v. *Texas* suggest interesting questions, which it is not necessary to answer. It may be doubted how far any court can be bound by legislation after this court declared such legislation beyond the power of the State, any more than it would be if the law had been held unconstitutional. It would be curious to consider whether the mutual mistake in a matter which, on the face of the transaction, obviously went to the root of the gift was of such a nature as to warrant an avoidance when the mistake was discovered, including the question whether the mistake was one of law or fact. See *Bispham* v. *Price,* 15 How. 162; *Upton* v. *Tribilcock,* 91 U. S. 45; *Snell* v. *Insurance Co.,* 98 U. S. 85, 90–92; *Griswold* v. *Hazard,* 141 U. S. 260, 284; *Hirschfeld* v.

*London, Brighton & South Coast Ry.,* 2 Q. B. D. 1. There is the further consideration whether the gift created a public charity, as contended by the plaintiff in error, and if so, or whatever the nature of the trust, whether there is such a failure of the donee as to invalidate the gift and to destroy the legal title of the defendant, if otherwise good. See *Stratton v. Physio-Medical College,* 149 Massachusetts, 505, 508, and cases cited.

We shall consider none of these questions, because we are of opinion that the plaintiff in error must fail on the short ground that it is a stranger to the gift. The plaintiff in error treats the change brought about by the decision in 162 U. S. 1, as if it had been a cession of territory or mere transfer of sovereignty by that or other means. It was nothing of the sort. It was a discovery that the State of Texas never had had a title to the land known as Greer County. The United States found itself at liberty to do what it chose with that land. It could have done nothing. It could have subdivided it at will. It could have made it part of some existing county. The land and its inhabitants retained no legal personality, least of all that personality with which Texas had purported to endow them. The United States, it is true, very properly did what it could to preserve the former condition of things. By § 1 of the act of May, 1896, c. 155, 29 Stat. 113, it provided that "all public buildings and property of every description heretofore belonging to Greer County, Texas, or used in the administration of the public business thereof is hereby declared to be the property of said Greer County, Oklahoma," and otherwise it did all in its power to keep up the legal continuity of the county with the supposed old one. But some things were not within its power, and one thing which it could not do was to make an artificial creation of its own successor to the title to lands in Texas, supposing that title to have been parted with, by its independent fiat. Without the consent of Texas no corporation created by another sovereignty could succeed to Texas lands.

Greer County, Oklahoma, being a corporation created by a different sovereignty from that which purported to create Greer County, Texas, is technically a different person. It can claim the legal title, which Texas purported to convey to a creation of its own, only by succession, or that feigned identity familiar in the cases of executor and heir. See *Day* v. *Worcester, Nashua & Rochester R. R.*, 151 Massachusetts, 302, 307, 308; Littleton, § 337; *North* v. *Butts*, Dyer, 139*b*, 140*a*; *Oates* v. *Frith*, Hob. 130. But succession to land is governed wholly by the law of the place where the land lies. *De Vaughn* v. *Hutchinson*, 165 U. S. 566, 570. The land in controversy was no part of Greer County, but lies in Texas, and Texas, so far from having assented to the succession of the defendant, has assumed to deal with the land as its own, by legislation, and has directed this suit to be brought to recover it. The legal title of the State is clear, for on the disappearance of the *de facto* county the State took whatever title that county had. See *Meriwether* v. *Garrett*, 102 U. S. 472. The legal title is what is in question before us, and the actual continuity of the inhabitants of the county could be recognized only by way of trust. But it would be wrong to encourage the notion that the title still may be charged with a trust in favor of schools in Greer County. The aim of the statute, under which the patents were made out, was the support of Texas schools. That was its dominant purpose. We think it unlikely that any court of equity would deem it equitable to direct the fund to any other trust.

*Judgment affirmed.*