## DE VAUGHN v. HUTCHINSON.

### APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 114. Argued October 30, 1896. — Decided March 1, 1897.

This court looks to the law of the State in which land is situated for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances; and in the District of Columbia those rules are the rules which governed in Maryland at the time when the District was separated from it.

Under a will devising real estate in the District of Columbia to M. A. M. during her natural life, and after her death to be equally divided among the heirs of her body begotten, share and share alike, and to their heirs and assigns forever, M. A. M. takes a life estate only, and her children take an estate in fee.

SAMUEL De Vaughn, a resident of the District of Columbia, died on the 5th day of July, 1867, leaving a last will and

testament dated April 20, 1861. This will was admitted to probate September 1, 1867, and was, as to those of its provisions which are involved in the present litigation, as follows:

"I give and bequeath unto my sister, Susan Brayfield, all my personal property of whatever description.

"Item. I give and devise unto my sister Susan Brayfield the whole square four hundred and eighty-three and improvements, also lots twenty, twenty-one and part of lot twenty-two in square three hundred and seventy-eight, situated in the city of Washington, during her natural life, and at her death to her daughters Mary Rebecca Brayfield, Catharine Sophia Harrison and Martha Ann Mitchell, to be divided in the following manner, that is to say: Martha Ann shall have one half of lot twenty, as subdivided, being seventy-three feet deep, having on the same two houses. To Catharine Sophia, the other half (being the east half) of said lot twenty, having also on the same two houses, and Mary Rebecca shall have the corner store situated on lot twenty-one. Catharine Sophia shall have the two houses next south of said corner store on said lot twenty-one, and Martha Ann shall have the next two houses south of the two to Catharine Sophia, and adjoining the same on said lot twenty-one, and Mary Rebecca shall have the whole of that part of lot twenty-two, as subdivided from lot twenty and improvements, during their natural lives, and after their death to their heirs begotten of their bodies, and to their heirs and assigns forever.

"I also desire that square four hundred and eighty-three shall be subdivided at the death of my sister Susan Brayfield, and distributed as follows: Mary Rebecca Brayfield shall have the whole front on K street, ninety feet deep to a ten-foot alley, which comprises lots one and two, with all improvements on the same. Martha Ann Mitchell shall have ninety feet on Sixth street, running that breadth through the square to Fifth street, and Catharine Sophia Harrison shall have the remainder north portion of said square four hundred and eighty-three, during their natural lives, and at their death to be equally divided among the heirs of their bodies begotten, share and share alike, and to their heirs and assigns forever.

"Item. I give and devise to Mary Rebecca Brayfield the east part of lot nineteen, in square three hundred and seventy-eight, and all improvements on said lot, front and rear, during her natural life, and after her death to her heirs and assigns forever.

"Item. I give and devise to Catharine Sophia Harrison the east part. of lot seventeen, in square three hundred and seventy-eight, including all improvements, and also that part as subdivided in the rear in said square, during her natural life, and after her death to the heirs of her body begotten, and to their heirs and assigns forever.

"Item. I give and devise to Martha Ann Mitchell, daughter of Susan Brayfield, the west part of lot eighteen in square three hundred and seventy-eight, and all improvements, including that part as subdivided in the rear on said square, and to her heirs and assigns forever.

"I give and bequeath to my mother during her natural life, out of the rents of lots No. twenty, twenty-one and part of twenty-two, in square three hundred and seventy-eight, and also the whole of square four hundred and eighty-three, devised to my sister Susan Brayfield, the sum of twenty-five dollars per month; or, if properly provided for by my said sister, then only five dollars per month for her own use as she may think proper.

"Item. I give and devise to my brother John De Vaughn, in square four hundred and eight, lot D and parts of lots five in square four hundred and five, and lot two in square four hundred and eighty-seven, and all improvements, also lot eleven in square five hundred and seventeen, lots four and five *in square four and five* in square seven hundred and eighty-five, and to his heirs and assigns forever. All of which property is situated in the city of Washington, District of Columbia.

"Item. I give and devise to my brother William De Vaughn, of the city of Alexandria, State of Virginia, lot three in square one thousand and ninety-five, lot one in square six hundred and seventy-seven, lot four. in square forty-four, lot two in square one hundred and twenty-nine. Also lots B, C, D, F and G in square forty-three, all lying and being in the city

of Washington and District of Columbia, also the house and lot on Henry street in the city of Alexandria, State of Virginia, and to his heirs and assigns forever."

Martha Ann Mitchell, one of the devisees named in the will, died in the year 1866, before the death of the testator, Samuel De Vaughn, leaving as her only children and heirs at law Benjamin D. Mitchell, Richard R. Mitchell and Sarah W. Hutchinson. Mrs. Susan Brayfield, the tenant for life, died in December, 1891.

In May, 1892, James H. De Vaughn, Emily De Vaughn and Rebecca J. Kirk, as heirs at law of Samuel De Vaughn, brought, in the Supreme Court of the District of Columbia, a bill in equity against William H. De Vaughn and others, also heirs at law of Samuel De Vaughn. The purpose of the bill was to have a declaration that by reason of the decease of Martha Ann Mitchell during the lifetime of the testator the devise to her lapsed and became void, and that thereupon, upon the death of the testator and of Susan Brayfield, the real estate described in said devises became vested in the heirs at law of the said testator as if the said testator had died intestate as to said real estate; and, upon such declaration, that the said real estate should be sold and the proceeds of such sale should be distributed among the parties lawfully entitled thereto as heirs at law of the said Samuel De Vaughn.

To this bill appeared Benjamin D. V. Mitchell and others, the children of the said Martha Ann Mitchell, who were living at the death of the said testator, and who filed a demurrer to said bill. Upon argument in the Supreme Court of the District of Columbia, the demurrer was sustained, and, the complainants electing to stand on their said bill, a final decree was entered, dismissing the bill and awarding an account of rents and profits.

From this decree an appeal was taken to the general term, but the cause was thereafter transferred to and heard in the Court of Appeals of the District of Columbia, and on April 2, 1894, the decree of the Supreme Court was affirmed. From the decree of the Court of Appeals an appeal was duly prayed and allowed to this court.

*Mr. H. O. Claughton* for appellants. *Mr. Chapin Brown* was on his brief.

*Mr. Jeremiah M. Wilson* for appellees. *Mr. A. A. Hoehling, Jr.,* was on his brief.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

It is a principle firmly established that to the law of the State in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances. *United States* v. *Crosby,* 7 Cranch, 115; *Clark* v. *Graham,* 6 Wheat. 577; *McGoon* v. *Scales,* 9 Wall. 23; *Brine* v. *Insurance Co.,* 96 U. S. 627.

Accordingly, in the present case, we are relieved from a consideration of the innumerable cases in which the courts in England and in the several States of this Union have dealt with the origin and application of the rule in *Shelley's case.* We have only to do with that famous rule as expounded and applied by the courts of Maryland while the land in question formed part of the territory of that State, and to further inquire whether, since the cession of the lands forming the District of Columbia, there has been any change in the law by legislation of Congress.

We learn from the reported cases that the rule, as established in the jurisprudence of England before the American Revolution, was introduced into Maryland as part of the common law, and has been constantly recognized and enforced by the courts of that State. *Horne* v. *Lyeth,* 4 Har. & Johns. 431; *Ware* v. *Richardson,* 3 Maryland, 505; *Shreve* v. *Shreve,* 43 Maryland, 382; *Dickson* v. *Satterfield,* 53 Maryland, 317; *Halstead* v. *Hall,* 60 Maryland, 209.

But we also learn from those cases and other Maryland cases that might be cited, that though the rule is recognized as one of property, yet if there are explanatory and qualifying expressions, from which it appears that the im-

port of the technical language is contrary to the clear and plain intent of the testator, the former must yield and the latter will prevail.

Thus in the case of *Shreve* v. *Shreve*, 43 Maryland, 382, where there was a devise to named children of the testator, for and during their natural lives, and on the death of said children, or either of them, to his or her issue lawfully begotten, and their heirs or assigns forever, it was held that the word *issue* used in the clause cited was a word of purchase; and in the opinion it was said: "Again, there are words of limitation superadded to the gift to the issue; it is to them and *their heirs* forever. Now in the well-known case of *Luddington* v. *Kime*, 1 Ld. Raym. 203, the devise was in very nearly the same terms, viz., to A for life without impeachment of waste, and in case he should leave any *issue* male, then to such *issue* male and *his heirs* forever, with a limitation over in default of such issue, and the court held the testator intended the word *issue* should be *designatio personæ*, and not a word of limitation, *'because he added a further limitation to the issue,* viz., *and to the heirs of such issue forever.'* The principle deduced from this case is thus stated in Cruise's Digest, vol. 6, (3d Am. ed.) page 259: 'Where an estate is devised to a person for life, with remainder to his issue, with words of limitation added, the word "issue" will in that case be construed to be a word of purchase.'"

The court, in *Shreve* v. *Shreve*, 43 Maryland, 382, 397, took notice of the fact that the case of *Luddington* v. *Kime* has been doubted, particularly by Powell in his learned work on Devises, but the Maryland court adds:

"But these views (of Powell) do not appear to have been adopted at least by the most recent English decisions, for in *Golder* v. *Cropp*, 5 Jurist, N. S. 562, where a testator devised property to his daughter for life, and after her death to the issue of her body lawfully begotten, to hold to them and their heirs forever as tenants in common, and in default of such issue then over, it was held, the daughter took but a life estate. That case was decided by Sir J. Romilly, M. R.; and his opinion is thus briefly and emphatically expressed: 'I have always considered that where an estate is given to

the ancestor, and there is a direction that it is afterwards to go to the issue of his body, and the mode in which the issue are to take is specified, with words added giving them the absolute interest, there the ancestor takes an estate for life and not an estate tail, although there is a devise over in the event of the ancestor not having any issue. No one can doubt that the word *issue* is here used as equivalent to *children*. I am of opinion the daughter takes an estate for life, and that her issue take as purchasers an estate in fee simple as tenants in common.'

"So in the still more recent case of *Bradly* v. *Cortwright*, L. R. 2 C. P. 511, it was held that where an estate is given for life and the remainder to the issue is accompanied by words of distribution and by words which would convey an estate in fee or in tail to the issue, the estate of the first taker is limited to an estate for life; and that, whether the estate is given in fee to the issue by the usual technical words, heirs of the body, or by implication.

"It may be stated by Mr. Powell, that subsequent decisions in England have in effect overruled *Luddington* v. *Kime*, and that at the present time the will before us would receive a different construction in the English courts, but we have been referred to no decision in this country, nor are we aware of any, in which that case has been overruled or its authority questioned. It is, with others, cited by Chancellor Kent, as authority for the position that where the testator superadds words of explanation, or fresh words of limitation, and a new inheritance is grafted upon the heirs to whom he gives the estate, the case will be withdrawn from the operation of the rule. 4 Kent's Com. 221. It meets an approving reference in the very able opinion of Yeates, J., in *Findlay* v. *Riddle*, 3 Binney, 156, where there was a devise to it for life, and if he died leaving lawful issue, to his heirs as tenants in common and their respective heirs and assigns, and the court held that A took only an estate for life with a contingent remainder to his heirs.

"But what is more important to the decision of this case is the fact that the doctrine of *Luddington* v. *Kime*, and other

similar cases, has been repeatedly recognized and approved by the courts of this State. Thus in *Horne* v. *Lyeth,* 4 H. & J. 435, a case which Chancellor Kent cites as containing a learned and accurate exposition of the rule under all its modifications and exceptions, we find an exception to its operation thus stated: 'So where the persons to take cannot take as heirs by the description by reason of a distributive direction incompatible with a course of descent, as where gavelkind lands were devised to A and the heirs of her body lawfully to be begotten, as well males and females, and to their *heirs and assigns forever,* to be equally divided between them, share and share alike as tenants in common and not as joint tenants; in this case it was held that the words heirs of the body did not operate as words of limitation because they were corrected or explained by the words which followed, and were irreconcilable with the notion of descent, and *also because there were words of fee engrafted in the words of limitation,* which showed that the estates given to the children and not the estate of A were to be the groundwork of succession of heirs, or in other words that the children of it were to be the *termini* for the succession to take its course from.'

"Again, in *Lyles* v. *Diggs,* 6 H. & J. 373, we find approval of *Backhouse* v. *Wells* (another case that Mr. Powell insists has been overruled in England), in reference to which the court say: 'The devise was to one for life, and after his decease to the issue male of his body, and to the heirs male of the bodies of such issue, and the first taker was held to have only an estate for life, the word *issue* not being *ex vi termini* a word of limitation, and the words of limitation grafted upon it, as in this case, showing that it was used as a word of purchase and as descriptive of the person who was to take the estate tail.'

"In *Chelton* v. *Henderson,* 9 Gill, 432, the testator devised land to his son for life, and if he should have lawful issue of his body, then such issue, after the son's death, to have the land in fee tail, and if the son died without such issue, then over, and it was held that the son took but a life estate. In the opinion prepared by Judge Magruder in that case, which

is reported in a note to *Simpers* v. *Simpers*, 15 Maryland, 191, he says: 'In the case now to be decided there are words superadded to the word issue quite sufficient to give them the inheritance, and the law is, that where an estate is devised to a person for life, with remainder to his issue, with words of limitation superadded, the word issue will, in that case, be construed to be a word of purchase, which is the doctrine of *Luddington* v. *Kime*, cited from Cruise's Digest.'

" After this repeated and recent recognition by our predecessors of this rule of construction derived from *Luddington* v. *Kime*, and other like cases in the earlier English reports, we are constrained to hold that it applies to and governs that part of that clause of this will, which we have thus far considered, even though we may be of opinion a different construction would be given to it by the courts of England. Having thus determined the word issue is here used as a word of purchase, it is clear it must bear the same construction when used in the immediately following sentence, 'and if any of said children shall die without issue lawfully begotten, I give, devise and bequeath his or her portion to the surviving child or children and their issue and to the heirs of said issue forever.' In other words, the portion given to each child for life, goes in case he dies without leaving children in the same way as the original share, that is, to the surviving children for life, and upon their death to their issue in fee."

We have extracted such large portions of the opinion in this case of *Shreve* v. *Shreve* because it plainly shows that the will before us in the present case would have been construed by the Supreme Court of the State of Maryland as creating a life estate only in Martha Ann Mitchell and an estate in fee in the heirs of her body begotten. It is true that the words in *Shreve* v. *Shreve* were *issue* lawfully begotten, but the case of *Horne* v. *Lyeth* (4 H. & J. 435) is approved, where the words "the heirs of her body lawfully to be begotten," were similarly construed.

In *Clark* v. *Smith*, 49 Maryland, 106, 117, the court, by Alvey, J., stated the rule as follows:

" It is a well-settled rule of construction, that technical

words of limitation used in a devise, such as 'heirs' generally, or 'heirs of the body,' shall be allowed their legal effect, unless, from subsequent inconsistent words it is made perfectly plain that the testator meant otherwise. Or, to use the language of Lord Eldon, in *Wright* v. *Jesson*, 2 Bligh, 1, the words 'heirs of the body' will indeed yield to a particular intent that the estate shall be only for life, and that may be from the effect of superadded words, or any expression showing the particular intent of the testator, but they must be clearly intelligible and unequivocal."

Though these decisions were made since the lands in question in this case became part of the District of Columbia, yet their reasoning is based upon the history of the law in Maryland ever since that State became independent, and we are therefore warranted in the conclusion that the law as laid down in the cited cases was the law when the State of Maryland ceded to the United States the territory now embraced in the city of Washington and District of Columbia.

It is not claimed that there has been any legislation by the Congress of the United States which has modified or changed the law in this particular as it was when the lands in question were subject to the law of Maryland.

Nor do we find that there has been any attempt by the courts of the District to lay down a different rule. What is the law of those courts we learn from the opinion of the Court of Appeals filed in this case, reported in *De Vaughn* v. *De Vaughn*, 3 D. C. App. 50, where the doctrine was thus stated:

"It is certainly a well-settled principle in the law of real property, indeed as well settled as the rule in *Shelley's case* itself, that where an estate is expressly devised to a person for life, with remainder to the *heirs of his body,* and there are words of explanation annexed to such word *heirs,* from whence it may be collected that the testator meant to qualify the meaning of the word *heirs,* and not to use it in a technical sense, but as descriptive of the person or persons to whom he intended to give his estate, after the death of the first devisee, the word *heirs* will, in such case, operate as word of purchase."

As this opinion was delivered by a judge who was but recently the chief justice of the Court of Appeals of Maryland, it may not be out of place to quote what he says respecting the law of that State:

"In the courts of Maryland, where the law of real property is supposed to be the same as that which prevails in this District, except as it may have been changed by positive legislation since the cession by that. State, the same principle of construction has been fully recognized and applied in numerous cases. This will clearly appear upon examination of the cases of *Horne* v. *Lyeth*, 4 H. & J. 435; *Chelton* v. *Henderson*, 9 Gill, 432; *Shreve* v. *Shreve*, 43 Maryland, 382; *Fallon* v. *Harman*, 44 Maryland, 263; and *Clark* v. *Smith*, 49 Maryland, 117."

The case of *Daniel* v. *Whartenby*, 17 Wall. 639, was cited by the court below, and is discussed in the briefs of the respective counsel. The syllabus of the case is as follows:

"A testator gave his estate, both real and personal, to his son R. T., 'during his natural life, and after his death to his issue, by him lawfully begotten of his body, to such issue, their heirs and assigns forever.' In case R. T. should die without lawful issue, then, in that case, he devised the estate to his own widow and two sisters 'during the natural life of each of them, and to the survivor of them,' and after the death of all of them to J. W., his heirs and assigns forever; with some provisions in case of the death of J. W. during the life of the widow and sisters. *Held*, that the rule in *Shelley's case* did not apply, and that the estate in R. T., the first taken, was not a fee-tail, but was an estate for life, with remainder in fee to the issue of his body, contingent upon the birth of such issue, and in default of such issue remainder for life to his widow and two sisters, with remainder over in fee, after their death, to J. W."

This case came up on a writ of error to the Circuit Court of the United States for the District of Delaware, and it is noticeable that the reasoning of this court did not proceed upon the law as expounded by the courts of that State, but rather upon a general view of the English and American cases. Still, as the judgment of the Circuit Court was

affirmed, we may well suppose that the conclusion reached in this court was in conformity with the law as applied in the State of Delaware.

The rule extracted from the cases was thus stated by Mr. Justice Swayne:

"In considering it [the rule in *Shelley's case*] with reference to the present case a few cardinal principles, as well settled as the rule itself, must be kept in view. In construing wills, where the question of its application arises, the intention of the testator must be fully carried out, so far as it can be done consistently with the rules of law, but no further. The meaning of this is that if the testator has used technical language, which brings the case within the rule, a declaration, however positive, that the rule shall not apply, or that the estate of the ancestor shall not continue beyond the primary express limitation, or that his heirs shall take by purchase and not by descent, will be unavailing to exclude the rule and cannot affect the result. But if there are explanatory and qualifying expressions, from which it appears that the import of the technical language is contrary to the clear and plain intent of the testator, the former must yield and the latter will prevail."

And, after examining the language used, the conclusion was thus expressed:

"We entertain no doubt that the testator intended to give a life estate only to Richard, and a fee simple to his issue, and that they should be the springhead of a new and independent stream of descents. We find nothing in the law of the case which prevents our giving effect to that intent."

We agree with the court below that the reasoning of the case of *Daniel v. Whartenby*, 17 Wall. 639, if applicable to the present case, would sustain the construction put upon the will of Samuel De Vaughn by the Supreme Court of the District.

But even if that case be regarded as declaratory only of the law of Delaware, its principles were followed and applied in the subsequent case of *Green v. Green*, 23 Wall. 486, involving the construction of a conveyance of lands situated in the District of Columbia, and where the cases of *Daniel* v. *Whar-*

*tenby*, 17 Maryland, 639, and *Ware* v. *Richardson*, 3 Maryland, 505, were both approved.

We, therefore, think it clear that, under the law as declared in the courts of Maryland and of the District of Columbia, Martha Ann Mitchell took a life estate only, and that her children took an estate in fee.

In the view that we have taken of the case we are not called upon to reinforce the reasoning of the cases cited, but we shall add a single observation, in application of Chancellor Kent's statement of an exception to the rule. 4 Kent's Com. (6th ed.) 221. The word "heirs," in order to be a word of limitation, must include all the persons in all generations belonging to the class designated by the law as "heirs." But the devise here was to Martha Ann for life, and at her decease to her heirs begotten of her body and to *their* heirs and assigns — a restricted class of heirs — and this limitation shows that it was the intention of the testator that Martha Ann's children should become the root of a new succession, and take as purchasers and not as heirs.

The decree of the court below is

*Affirmed.*