34 F.2d 600 (1929)
FIDELITY-PHILADELPHIA TRUST CO.
v.
McCAUGHN, Collector of Internal Revenue.
No. 3974.
Circuit Court of Appeals, Third Circuit.
August 29, 1929.
*601 *602 *603 *604 Leslie M. Swope, James McMullan, and H. Gordon McCouch, all of Philadelphia, Pa., for appellant.
George W. Coles, U. S. Atty., of Philadelphia, Pa., and C. M. Charest, Gen. Counsel, and T. H. Lewis, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for appellee.
Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.
BUFFINGTON, Circuit Judge.
In the court below the executor of the estate of Therese L. Coles brought suit against the collector of internal revenue to recover income taxes alleged to have been erroneously collected. The case was heard on the pleadings and judgment entered in favor of the collector, whereupon the plaintiff executor appealed.
The case is so fully and satisfactorily discussed in the opinion of Judge Kirkpatrick, which is printed in the margin,[1] that an opinion by this court would be but an effort to state in different language what he has already said. We limit ourselves, therefore, to adopting his opinion and affirming the judgment below.
NOTES
[1] This is an action for the recovery of a portion of an inheritance tax paid under protest. It is now before the court upon a statutory demurrer to the plaintiff's statement of claim. The admitted facts are concisely and accurately summarized by the plaintiff as follows:

John C. Bullitt, a citizen and resident of Pennsylvania, died in 1902. By his will he created a trust for the benefit of his seven children, among them being Therese L. Coles, which trust was to endure throughout the lives of all of his grandchildren then in being and for 21 years thereafter. The fifteenth and sixteenth articles of his will vested certain powers of appointment in the seven children. There was some uncertainty as to the interpretation of these articles. The matter came up in the orphans' court of Philadelphia county in Bullitt's Estate (No. 2) 24 D. R. 224. That court construed the said articles to vest in the seven children powers of appointment of the following character:
1. Each child was given power to appoint one-seventh of the entire estate.
2. The power could be exercised either by deed or will.
3. As to income, the disposition thereof could take effect in possession only upon the death of the donee.
4. As to principal, the disposition thereof could take effect in possession only at the termination of the trust.
5. Anticipation by sale or alienation in possession of either income or principal was expressly prohibited each donee during his or her life.
Therese L. Coles, a citizen and resident of Pennsylvania, died on December 25, 1922, and, eliminating certain irrelevant alternative provisions, she exercised the powers of appointment conferred by her father's will as follows:
1. The income of the trust, to her grand-daughter, Elizabeth Therese Tyler, for life, and thereafter to the person that grandchild should appoint by will.
2. The principal to such persons as her grand-daughter, Elizabeth Therese Tyler, should by will appoint, to take effect at the termination of the trust.
Because of this exercise of the power of appointment the United States collector of internal revenue at Philadelphia included a one-seventh portion of John C. Bullitt's trust estate in the gross estate of Therese L. Coles, and assessed a tax measured thereby upon the latter's executor under the authority of section 402(e) of the Revenue Act of 1919 (40 Stat. 1097), which reads as follows:
"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. * * *
"(e) To the extent of any property passing under a general power of appointment exercised by the decedent * * * by will. * * *"
Therese L. Coles' executor paid the taxes so assessed under protest, filed seasonable claims for refund which were rejected and in due time brought this suit to recover.
Whether or not the value of the property appointed by the decedent, Therese L. Coles, was properly included in her taxable gross estate (which is the question for decision) depends entirely upon whether or not the powers of appointment conferred upon Mrs. Coles by the fifteenth clause of her father's will are general powers of appointment within the meaning of the Revenue Law. The clause in question shortly stated is as follows: "I distinctly * * * empower * * * Therese L. Coles * * * to dispose by * * * will * * * of one-seventh of the income * * * during the continuance of the trusts hereunder, and I also give and confer upon each of my said seven children (of whom Mrs. Coles was one) the power * * * to dispose of the one-seventh part of the principal from which such income shall be derived, such will * * * as to the principal to take effect at the time that the trusts under this will shall cease and determine." It will be noted that this clause confers upon Mrs. Coles two separate powers, the one to appoint income and the other to appoint principal.
Before taking up the principal question, it is necessary to dispose of the contention, strongly urged by the plaintiff, that by section 402(e) of the act of 1919 "Congress intended to reach property subject to a power of appointment only in those states where such property constitutes a part of the donee's estate or assets for the benefit of his or her creditors, not in Pennsylvania where the contrary holds." The plaintiff cites and relies strongly upon Lederer v. Pearce (C. C. A.) 266 F. 497, 18 A. L. R. 1446. However, if that case be examined in connection with the construction given to the Revenue Act of 1916 (39 Stat. 756) by the Supreme Court in U. S. v. Field, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461, it will be seen that the reasoning of the opinion (upon which the plaintiff particularly bases his position) has been overruled by U. S. v. Field, although the conclusion reached is not disturbed. A brief consideration of these two cases will disclose the difficulty with the plaintiff's argument.
The Revenue Act of 1916 did not refer in terms to property passing under a power of appointment exercised by the decedent. Section 202 of that act (which is the basis of section 402 of the Act of 1919) defined the property which was to be included in valuing the gross estate for taxation. The conditions imposed were that the property must be (1) an interest of the decedent at the time of his death, (2) which after his death is subject to the payment of the charges against his estate and the expenses of its administration, and (3) is subject to distribution as part of his estate. The question considered in Lederer v. Pearce was whether or not the property as to which the decedent had a power of appointment met the second condition, viz. whether or not it was subject to claims of creditors of the decedent. Under the English rule followed in many states, property appointed constitutes equitable assets which the executor is bound to apply to the claims of creditors in preference to voluntary appointees. The law in Pennsylvania, however, was and is otherwise, and the property so appointed is not subject to such charges and claims. The court held that under the law of Pennsylvania the property in question did not meet the second condition of the act of 1916, and therefore that it could not be included in the estate for purposes of taxation. That was really all that was decided. The court, however, in stating the English rule, said: "The rule in England is that a donee of a power takes a beneficial interest in the property of the power and, upon the exercise of the power, the property becomes a part of his estate, subject to his debts like his other property in preference to the claims of legatees or appointees." And, upon the assumption that appointed property, if subject to claims of creditors, will also be part of the estate of the donee of the power and thus comply with all conditions of the act of 1916, the opinion goes on to say that the federal estate tax may reach property in one state when it would fail to reach like property in another, according as the laws of distribution and administration varied and that the law of the state upon that point was the test of the valid assessment of the tax against given property. This is the real basis of the plaintiff's argument. He argues that when the act of 1919 was passed Congress intended to act in harmony with state laws by virtue of which (he says) the act of 1916 operated upon property in some states which it did not touch in others, depending on whether or not the property was subject to claims of creditors.
U. S. v. Field came up from Illinois, a state where the English rule was followed and where the property could be made subject to the payment of charges against the decedent's estate, so that the second condition of the act of 1916 was met by the property in question. But the court there held that the three conditions of the act must be construed conjunctively, and addressed itself to the question of whether or not property passing under a general power of appointment was subject to distribution as part of the donee's estate (the third condition). The English rule was examined and the conclusion reached that even under that rule such property was not part of the donee's estate and consequently not "subject to distribution" as such. A study of the exhaustive review of the English authorities in O'Grady v. Wilmot, [1916] 2 A. C. 231, leaves no doubt of this. The Supreme Court thus held that property passing under a general power of appointment did not meet the third condition in any state, and such property was therefore in no state part of the taxable estate under the act of 1916. The effect of the decision of U. S. v. Field was to make the point which was the basis of the decision in Lederer v. Pearce (i e., whether the property was subject to claims of the donee's creditors) entirely academic, since even if the Pennsylvania rule had been otherwise, the property considered in that case could not have been taxed, not being subject to distribution as part of the decedent's estate.
When the Congress passed the act of 1919 and added to the property which it had already included in the gross estate of the decedent for tax purposes property passing under a general power of appointment exercised by the decedent, its purpose could only have been to extend the incidence of the tax to property which had not previously been subject to it. If the plaintiff's position were correct, section 402(e) of that act would have added no new subject to those already selected for taxation. In that event its purpose could only have been to clarify the act of 1916. But that suggestion was expressly rejected by the Supreme Court which considered the effect of the act of 1919 in U. S. v. Field, though that act had been passed too late to directly affect the case then before the court.
The power of Congress, in creating a new field for taxation, to impose taxes entirely without regard to the characteristics given to the property so taxed by the law of its situs was recognized by the court in Rosenberger v. McCaughn (C. C. A.) 25 F.(2d) 699, 700, in which case the court by Judge Woolley said:
"It is established beyond question that the law of the state in which property is situated governs federal courts in many things; in descent, alienation and transfer and the effect and construction of wills (De Vaughn v. Hutchinson, 165 U. S. 566, 17 S. Ct. 461, 41 L. Ed. 827); but whether it governs the federal government in the performance of its sovereign power to levy taxes is another question, and is the precise question here.
"True, state decisions sometimes control federal legislation, for instance, in determining a deduction allowed by the federal estate tax, but that is because of the express provision  or permission  of the federal act which authorizes deduction of such charges as `are allowed by the laws of the jurisdiction * * * under which the estate is being administered.' Lederer v. Northern Trust Co. (C. C. A.) 262 F. 52. But whether the federal government is limited in its selection of subjects for taxation by rules of state courts in respect to property within the state's jurisdiction is another matter. * * *"
And the court held that although the instrument in question was a sale in Pennsylvania, nevertheless under the general revenue statute the income arising from it would be held to be income which was taxable.
The Congress thus had the power to tax any transmission of property effected by death even though by the law of the decedent's domicil such property was not part of his estate. In view of the construction of the act of 1916 given by the court in U. S. v. Field, the enactment of section 402(e) of the act of 1919 indicates a clear intent to exercise that power. The question of an intent to act in harmony with state laws does not arise. In the sense that the act of 1919 did not create any diversity in the incidence of the tax in the different states it operated in harmony with the state laws. In the sense that it included a subject of taxation which in no state was part of the decedent's estate, the Congress was acting in disregard of state rules of property.
Coming now to the controlling issue in this case, what did the Congress intend by the words, "general power of appointment"? "By a general power we understand a right to appoint to whomsoever the donee pleases. By a particular power is meant that the donee is restricted to some object designated in the deed creating the power." Sugden on Powers (8th Ed.) p. 394. "Powers may be either general or limited. General powers are such as the donee can exercise in favor of such person or persons as he pleases, including himself. Limited powers, which are sometimes called special powers, are such as the donee can exercise in favor of certain persons or classes." Farwell on Powers, c. 1, § 6. "By a general power it is understood the right to appoint to whomsoever the donee pleases. By a particular power is meant that the donee is restricted to some objects designated in the deed creating the power, as to his own children." 21 R. C. L. 774.
The right of the donee to vest a fee simple estate in the appointee is not an essential attribute of a general power of appointment. The statement of the Supreme Court of Pennsylvania in Thompson v. Garwood, 3 Whart. 287, 305, 31 Am. Dec. 502, that "a general power is, in regard to the estate which may be created by force of it, tantamount to a limitation in fee * * * because it enables him (the donee) to give the fee to whom he pleases," relied on by the plaintiff, must be read in connection with the definition which closely precedes it which is: "By a general power is understood a right to appoint to whomsover the donee pleases. By a particular power is meant, that the donee is restricted to some objects in the deed creating the power, as to his own children." It is true that the donee of a general power is virtually absolute owner of the property over which his power extends, but it is not true that to make the power a general one it is necessary that the property over which it extends must be a fee simple. Whatever it may be, if the donee can appoint it to anyone he pleases, the power of appointment is a general power. In any event, however, the exact definition adopted by the court in Thompson v. Garwood is not necessarily binding upon this court in construing a tax statute. Rosenberger v. McCaughn, supra.
There are plenty of cases in which the courts have recognized general powers to appoint remainders existing coincidently with powers to appoint life estate. Frequently the power as to the life estate will be a special one and thus a general power and a special power may exist together as to different estates in the same property. Thus in In re Ackerley, [1913] 1 Ch. 510, the income of the donee's share was to be held in trust for her during her life. After her death, the capital was to be held subject to the life interest of a future husband of the donee upon trusts for the children of the donee with the proviso that if no children should obtain a vested interest under the trust, the share was devised to such person as the donee should by will appoint. The question was the construction of the donee's will but the court said: "It is conceded that this will undoubtedly exercises the general power of appointment which the testatrix had over the settled property in default of any children or issue attaining a vested interest therein. The point for decision is whether it also exercises in favor of the plaintiff the special power * * * of appointing a life interest in the settled fund to any future husband." There was thus recognized, not only the grant of separate powers by the donor, but also that the right to appoint future estate in the nature of a contingent remainder or executory devise without limitation as to persons is a general power. This was one of a class of cases including Ferrier v. Jay, L. R. 10 Eq. 550, and In re Sharland, [1899] 2 Ch. 536, which the court referred to as "two power cases." In U. S. v. Field, supra, the opinion assumes that the power of appointment involved was a general power although it extended only to one-half of the income from a trust fund, under a trust whose terms were similar to those in the will of John C. Bullitt, and there was no power at all given as to the principal at the end of the trust.
It is also argued that the power was special because the donee could not exercise it for her own benefit during her lifetime. This argument is disposed of by the decision of the Circuit Court of Appeals in Whitlock-Rose v. McCaughn (C. C. A.) 21 F.(2d) 164. Of course, where a power is exercised only by will, the donee cannot appoint to herself. But this, it was held, did not interfere with it being a general power.
The plaintiff further says that, even if we accept the definitions above cited, this power was special, because the donee could not give the principal to whomsoever she pleased in that she could not appoint it to those of the grandchildren who were living at the time of her father's death. In considering this argument, let us not overlook the fact that there are here two separate powers, the one to appoint the income or beneficial life interest or interests during the continuance of the trust, and the other to appoint the remainder in fee after the termination of the trust. Each of these powers could be exercised by Mrs. Coles in favor of whomsoever she pleased without restriction. The fact that, if she appointed the principal to any of the grandchildren of John C. Bullitt who had been living at the time of his death, such appointee would have been precluded by the terms of the trust from taking a beneficial interest, is a limitation arising from the inherent nature of the property rather than from any restriction as to the exercise of the power itself. In other words, if general powers can exist at all as to property less extensive than an absolute and unconditional fee simple, then Mrs. Coles had such general powers, for after the original testator had determined to limit his estate by carving out a beneficial estate in the income during a certain period, he could not have given any more general or unrestricted powers over it than he gave to Mrs. Coles. "It is true the distinction between general and limited powers in the common language of English law relates, not to conditions affecting the donees of a power, or otherwise antecedent to an appointment, but to the nature of the appointment which may be made under the power." Charlton v. Attorney General, 4 App. Cas. 427, 446. In this will if there is any condition limiting the exercise of the powers in any way, it arises from the special nature of the property as to which they are exercisable and are antecedent not only to the appointment but antecedent to the creation of the power.
The purpose of the Revenue Act is to establish a tax upon the transmission of property and not upon the property itself. A logical explanation of the inclusion of property passing under general powers of appointment and the exclusion of property passing under special powers is that where the original testator has limited the right to appoint to certain named beneficiaries or to a limited class of beneficiaries, it is he and not the donee of the power who in the broadest sense transmits the property to the beneficiaries. The donee's exercise of such narrow and limited powers may be taken rather as a mere stage in the original scheme of inheritance than as an independent source of descent. In such case, it is really the death of the original testator which may reasonably be taken as the transmission of the property for the purpose of taxation. Where, however, the donee has full power to direct the property to any beneficiary that he pleases, there is in a real sense a transmission of it from him rather than from the original testator. The important thing is the latitude of the donee's power of disposition rather than the quantum of the interest which he may dispose of or the time of its vesting. Under this view, it is of little moment whether the property itself is a fee or less than a fee; whether it is a legal or an equitable interest; or whether it is susceptible of immediate enjoyment or its enjoyment is postponed until a future period.
I therefore conclude that the property passing under the exercise of Mrs. Coles' power of appointment was "property passing under a general power of appointment," within the meaning of the Revenue Law. The inclusion of the entire value of the one-seventh portion of John C. Bullitt's trust estate was proper. If the power had been given only as to the principal or only as to income, or if either of the powers had been special, a somewhat difficult question of valuation might have arisen. But here, by her exercise of the powers given her, Mrs. Coles really disposed of the entire beneficial interest in the fund. The only thing she did not and could not appoint was the naked legal title during the continuance of the trust, which has no pecuniary value. I do not think that it matters at all that the interests appointed by her could not coalesce to form a fee. Taken together they constitute the whole beneficial interest in the property, the value of which was properly included in her gross estate.
The affidavit of defense raising questions of law is sustained. The statement of claim is adjudged insufficient and judgment may be entered for the defendant on motion of counsel.