## UNITED STATES v. PROVIDENT TRUST CO. OF PENNSYLVANIA et al.

Circuit Court of Appeals, Third Circuit.
October 3, 1929.

No. 4009.

George W. Coles, U. S. Atty., of Philadelphia, Pa. (C. M. Charest, Gen. Counsel, and T. H. Lewis, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

John S. Sinclair, Cuthbert H. Latta, Jr., and Charles Sinkler, all of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. James K. Young and Mary Wilson Young, his wife, acquired as tenants by the entirety several parcels of real estate in Philadelphia. Later, they conveyed some of them for a consideration part paid and the balance secured by a ground rent, reserved to themselves as tenants by the entirety, to yield them a certain annual income, redeemable at a named figure.

James K. Young died in 1923. The Commissioner of Internal Revenue, upon review and audit of the estate tax return made by his administrators, included in the decedent's gross estate the value of the ground rent and other property, so held, and determined a deficiency in the sum of $1,244.43. From this action Young's administrators appealed and the Board of Tax Appeals entered judgment against the Commissioner. 5 B. T. A. 1004. The United States then brought this suit in the District Court against Young's administrators to collect the additional tax so determined. The court, on facts averred in the statement of claim and admitted by the affidavit of defense, raising a question of law as though on demurrer, held that the Congress, by including for taxing purposes, in the gross estate of a decedent, property held by him and his wife as tenants by the entirety, exceeded its constitutional power and entered judgment for the defendants. The case is here on the government's appeal.

The tax was assessed under the Revenue Act of 1921 (42 Stat. 227). That Act, by Section 401, imposes a tax "upon the transfer of the net estate of every decedent dying after" its passage. Section 400 defines "net estate" to mean "the estate as determined under the provisions of Section 403." This section provides that the "net estate shall be determined by deducting from * * * gross estate" certain items with which we are not concerned. To obtain a net estate there must, of course, first be a gross es-

tate. So Section 402 provides that the gross estate of a decedent shall include the value at the time of his death of all property, real and personal, "to the extent of the interest therein held jointly, or as tenants in the entirety, by the decedent and any other person."

In a word, the Congress provided that the value of property held at the time of death by a decedent and his spouse as tenants by the entirety shall be included in the deceased tenant's gross estate, and imposed a tax upon the transfer of the resultant net estate. The single question in this case is whether or not the Congress had power to draw such an estate within its reach and impose an estate tax upon it.

The effective words of the quoted provisions of the Revenue Act are "transfer" and "net estate." The Congress, in these provisions and in like provisions in other revenue acts, has been careful to impose the tax not upon property but upon the "transfer" of an interest in property, and the courts in construing the provisions have said, again and again, that the tax is not upon property but upon the privilege of transferring it. Thus the acts avoid imposing a direct tax, which to be valid must be apportioned. Section 2, Clause 3, and Section 9, Clause 4, of Article 1 of the Constitution. Hylton v. United States, 3 Dall. 174, 1 L. Ed. 556.

But the meaning of the word "transfer" as interpreted by the courts is not so literal as at first it would seem to be. Therefore, in order to determine whether the interest of a deceased tenant by the entirety constitutes an "interest" in his property which from its nature can be included in his gross estate, and whether on his death there is a transfer of such an interest to his co-tenant which is taxable as a part of his net estate, we shall look into the meaning of a "transfer" as the subject of taxation.

The earliest pronouncement upon the matter was made in Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 753, 44 L. Ed. 969, which was a full recognition that the transmission of some interest in property occasioned by death is the basis for the imposition of an estate tax as distinguished from a direct tax on property.

Reviewing the field of death duties and bringing the act then under review within its boundary, the Supreme Court stated that: "Tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being, and that it is the power to transmit, or the trans-

mission from the dead to the living, on which such taxes are more immediately rested."

Knowlton v. Moore has been cited in practically every case in which federal estate tax acts have been involved and we know of no instance in which the court's declaration of the principles upon which such acts are based has been departed from.

The tax has ever been treated as a duty or excise because of the particular occasion which gives rise to its levy. New York Trust Co. v. Eisner, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660; Y. M. C. A. v. Davis, 264 U. S. 47, 44 S. Ct. 291, 68 L. Ed. 558. The subject of the tax—the event upon which the tax is predicated—is the transmission of some interest in property *occasioned by death*, hence the classification of estate taxes as death duties. If no interest is transmitted, or if no transfer takes place by the event of death, the subject of the tax is absent and accordingly no estate tax can be validly imposed. While steadfastly adhering to the principle that death is the generating source from which the taxing power takes its being, the Supreme Court has recognized transfers subject to the tax that had been made otherwise than by death yet made finally effective at death, such as transfers made before death yet in contemplation of death, transfers in trust made before death with power reserved by the settler to revoke them, Reinecke v. Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410; transfers of insurance policies with power reserved by the insured to change the beneficiaries, Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405; and transfers of property with a reserved power of appointment, Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 227, 72 L. Ed. 565. In all these cases the transfers had not been completely effected or the privilege of succession or the right of possession or enjoyment fully exercised before death. But in all death terminated reserved powers of control and effected final transfers to the advantage of those who had obtained the properties subject to the powers. Thus there was brought about at death, or by death, a "shifting of the economic benefits and burdens of property," which is the real subject of the tax. Saltonstall v. Saltonstall, supra.

A pertinent distinction is that the tax is not upon the interest to which another succeeds on death but is an excise upon the transfer of the estate of the owner upon his death, to be reckoned upon the value of the interest transferred. Y. M. C. A. v. Da-

vis, 264 U. S. 47, 50, 44 S. Ct. 291, 68 L. Ed. 558; Edwards v. Slocomb, 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564. Nor is the tax limited to a transfer of property directly from the decedent to the transferee but extends at least to a transfer of property which, though not the decedent's, was produced by him with the purpose, effected at his death, of having it pass to another.

Thus do the courts regard a "transfer"—the thing taxed—as it appears in the provision of the Revenue Act under review. Of course, if there is no transfer, there is no valid tax. But the Act imposes the tax upon something more than a transfer, namely; "upon the transfer of the *net estate*" of a decedent. So, also, if there is no net estate of the decedent, there is no valid tax. Thus we come to the question whether on the death of one tenant by the entirety there is any "interest" in his estate which, because of a transfer to the other tenant occasioned by his death, falls into his gross estate and later becomes taxable as a part of his net estate. The answer to this question by a federal court depends primarily on the character of a tenancy by the entirety under the law as declared by the courts of the state in which its exists, for a construction or definition of the estate by the courts of the state constitutes a rule of property which is binding upon federal courts in considering its devolution or transfer. DeVaughn v. Hutchinson, 165 U. S. 566, 570, 17 S. Ct. 461, 41 L. Ed. 827; Clarke v. Clarke, 178 U. S. 186, 20 S. Ct. 873, 44 L. Ed. 1028; Edward Hines Yellow Pine Trustees v. Martin, 268 U. S. 458, 464, 45 S. Ct. 543, 69 L. Ed. 1050.

A tenancy by the entirety in Pennsylvania retains in their purity all the characteristics of its English origin. A quotation from one of many decisions by its courts, always in harmony, will disclose the rule of property which Pennsylvania has laid down in respect to an estate of this character.

In Beihl v. Martin, 236 Pa. 519, 522, 84 A. 953, 954, 42 L. R. A. (N. S.) 555, decided as recently as 1912, the Supreme Court said:

"This estate is too well established and too well defined to be subject to judicial impairment. Recognizing its very anomalous character, we have been careful, as all our cases show, to give effect to those peculiar incidents which naturally and logically attach, especially to its chief distinguishing incident, which exempts it from the ordinary legal process to which all other estates are subject.

"Fundamentally the estate rests on the *legal unity of husband and wife*. It is therefore a unit, not made up of divisible parts subsisting in different natural persons, but is an indivisible whole, vested in two persons actually distinct, *yet to legal intendment one and the same. Each is seized of the whole estate from its inception, and upon the death of one, while the right of survivorship remains to the other, that other takes no new title or estate.* 'A conveyance to husband and wife creates neither a tenancy in common nor a joint tenancy. The estate of joint tenants is a unit, made up of divisible parts; that of husband and wife is also a unit, but it is made up of indivisible parts. In the first case there are several holders of different moieties or portions, and upon the death of either the survivor takes a new estate. He acquires by survivorship the moiety of his deceased cotenant. In the last case although there are two natural persons, they are but one person in law, and *upon the death of either the survivor takes no new estate.* It is a mere change in the properties of the legal person holding, and not an alteration in the estate holden. The loss of an adjunct merely reduces the legal personage holding the estate to an individuality identical with the natural person. The whole estate continues in the survivor, the same as it would continue in a corporation after the death of one of the corporators. This has been the settled law for centuries.' Stuckey v. Keefe, 26 Pa. 397."

Federal courts in the Third Circuit have from time to time recognized the authority of the aforegoing case. Getty v. A. Hupfel's Sons (D. C. 1923) 292 F. 178, Id. (C. C. A. 1924) 299 F. 939.

The courts of Pennsylvania are entirely consistent in carrying into effect, even in matters of taxation, the rule of property thus declared. The transfer inheritance tax statute of Pennsylvania provides a succession tax. In a case where an attempt had been made to tax a tenancy by the entirety it was contended (as it is contended in the case at bar) that the transfer did not take effect in possession and enjoyment until after the death of one of the tenants and that it was then that the possession and enjoyment passed to and became effective in the surviving spouse. The court held that, as the right of possession and enjoyment arose at once in favor of both grantees, the survivor received nothing by virtue of the death of her husband which might be the subject of

the tax. Estate of Henry G. Fink, 6 Erie County Law Journal, 281 (1922).

This federal court is thus confronted by a rule of property, in respect to "descent, alienation and *transfer*," definitely established by the law of the state in which the land is situated. De Vaughn v. Hutchinson, 165 U. S. 566, 570, 17 S. Ct. 461, 41 L. Ed. 827. If only we could ignore what some term the "technical characteristics" of a tenancy by the entirety (which Pennsylvania, however, has declared to be its basic characteristics), regard the legal unity of husband and wife as "pure fiction" and look upon the estate as a "practical matter," the problem would be easy to solve. But we must face the problem precisely as the Commonwealth of Pennsylvania and the Congress have presented it. That it is a problem the government recognizes by its concessions in its brief that "In the case at bar * * * neither the title nor the estate nor the interest of the survivor was created by the death of the decedent"; and that "Congress has undertaken, in spite of the well established rule that there is no transfer of title or of interest or of estate from one tenant by the entireties to another upon death," to impose a tax upon estates of this class. The government, however, meets this legal difficulty by stating (what is true) that in this case on the death of one tenant "there was a *change* in the incidents of the survivor's estate," and that Congress provided "that the change in the relation of the wife to the property *shall be considered* a transfer affording a proper subject matter to be taxed."

By these concessions the government rather begs the question, or very nearly admits the question out of the case, for the question concerns the *power* of the Congress to do what it did, namely, to tax as a transfer an interest in an estate of this kind on death when in an estate of this kind there is no transfer on death. If there be no transfer the Congress, "under the mere guise of reaching something within its powers, * * * may not lay a charge upon what is beyond them." Nichols v. Coolidge, 274 U. S. 531, 541, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081.

The government, by basing its case upon a "change" in the relation of the two tenants, occasioned by the death of one, as the subject-matter to be taxed, manifestly can succeed only if that change amounts in law to a transfer. On the theory of taxable change, an argument may be made something like this:

On the instant of the husband's death in this case the estate by the entirety ended; then the wife acquired another estate—an unfettered fee—of which she became the sole owner. The instant he died, the wife had something she did not have before. True, in the theory of a tenancy by the entirety she had, as before, the whole estate, yet it is now shorn of the incident of her husband's right of survivorship. What came to her on her husband's death necessarily passed from him. Thus his death generated not merely a change of owner but a change of estate. He being first to die, that which left him was his right of survivorship and while, of course, his right of survivorship could not as such pass to his wife, it, nevertheless, passed out of legal existence and thus effected a change or transfer of an interest in property which once was wholly his and which now is wholly hers. But for the husband's death, his wife, though in fiction holding the whole estate, would continue to hold actually a limited interest in the estate, yet by reason of his death the estate by the entirety ceased, a change in the estate was wrought, and her interest in the estate by reason of his death and her survivorship became unqualified and absolute. Of course this line of reasoning overlooks the legal fact that the generating source of the wife's estate, even after her husband's death, was not his death but the instrument that created the estate, and it also overlooks the significant principle declared in Knowlton v. Moore that transmission by death (not transmission from the dead) is alone the generating source from which the taxing power, here exercised, takes its being. And thus we are back to where we were at the start. Was there a "transfer" of an interest occasioned by death? A mere change of status, though accompanied by economic benefits, does not necessarily involve a transfer of an interest in property, even if the change be brought about by death. It can hardly be said that the change effected by death of the tenant of a particular estate involves a transfer of his estate to the remainderman when, in law, the two estates were created at the same time long before, the estate of the remainderman having vested at the time of its creation. Nor does the mere ceasing or ending of an estate, distinguished from the ceasing of an estate with reserved powers not exercised, constitute a transfer or provide a subject-matter for taxation for when, as in the instance of a vested remainder, the particular tenant dies, all that he had ceases to be his and passes out of him, it is true, but it passes out of him by

virtue of the instrument of its creation, and the economic benefits which usually and naturally enure to the remainderman (or other person succeeding) are occasioned not by his death but by that instrument. A change in an estate or a cessation of an interest in an estate whereby nothing is left in or transferred through the estate cannot create something in the "net estate" of a decedent on which to base an estate tax.

Keeping in mind that each tenant by the entirety is completely seized of the whole estate by virtue of the creative instrument, and that when one dies the other takes nothing by a new title but merely ceases to divide its enjoyment, United States v. Robertson (C. C. A.) 183 F. 711, we inquire, what passed out of the husband in this case when, he died? Certainly his right of survivorship. What came to the wife when he died? Not a moiety or other part of the estate because the prior holding had not been joint; and certainly not the whole of the estate for that she already had acquired and continued to hold under the instrument which created the estate. What was the result of the husband's death upon her? She got rid of him and his right of survivorship and of any obligation on her part to divide the enjoyment of the property with him. The interest of both being per tout et non per my, that is, where neither is a tenant of a moiety but each is a tenant of the whole, when the husband died his tenancy simply ended and the wife's simply continued precisely as it was arranged by the original instrument. When, as here, the husband died, the wife received nothing from him. She already had all there was to be had—the whole estate. Therefore on his death nothing was transferred from him to her. He stopped and she went on, and still goes on, just as she began without waiting upon, or being dependent upon, any transfer of his interest in the property theretofore held by them as tenants by the entirety,—unless, indeed, the "change" which followed the husband's death resulted in a shifting of the economic benefits and burdens of property, including thereafter her sole right to alien, encumber and devise, and unless this shifting of benefits and burdens amounted in itself to a "transfer" to her of an "interest" which *belonged* to her husband and which on his death fell into his gross estate and thereafter became a part of his net estate subject to tax within the latitude which the decisions have given to that expression.

Unless we ignore the peculiar yet essential characteristics of a tenancy by the entirety which grew up in the common law and persisted without change through the law of Pennsylvania, we cannot find that on the death of one tenant the interest which he had in the estate when living is, by reason of his death, transferred to the tenant surviving, nor, remembering that each tenant is seized of the whole, can we find that on the death of one the value of the whole property shall be taken as the measure of the interest claimed to be transferred, as though he were the sole owner, or that the tenant surviving, also holding the whole title, should have the value of her estate taken as the basis and measure of the decedent's tax.

We are constrained to hold with the learned trial judge that it was beyond the constitutional power of the Congress, exercised by Section 402 (d) of the Revenue Act of 1921 (42 Stat. 278), to include in the decedent's gross estate property held by him and his wife as tenants by the entirety. Holding therefore that the tax assessed by the Commissioner under Section 401 of the Act is void, the judgment of the District Court is affirmed.