W. P. FERGUSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34975. Promulgated June 24, 1930.

*Robert Ash*, *Esq.*, for the petitioner.
*J. Arthur Adams*, *Esq.*, and *R. B. Cannon*, *Esq.*, for the respondent.

132

OPINION.

MARQUETTE: The petitioner contends that the rentals, royalties and cash considerations received by him from the several oil and gas leases on his Archer County farm are capital gains and should be taxed as such; that to the extent that they were received during the period January 1, 1922, to February 6, 1924, they were community income taxable equally to him and his wife, and that he is entitled to the maximum earned-income credit for 1924 and 1925. The issues will be discussed in the order in which they are stated.

It has been many times decided by the courts of the United States that, for the purpose of Federal income taxes, an ordinary mineral lease, which includes an oil and gas lease, is not to be treated as a sale of the mineral in place, irrespective of the laws of the State where the mineral is produced, and that the proceeds going to the lessor are rentals and taxable as income. *Stratton's Independence* v. *Howbert*, 231 U. S. 399; *Stanton* v. *Baltic Mining Co.*, 240 U. S. 103; *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503; and *United States* v. *Biwabik Mining Co.*, 247 U. S. 116. And following those decisions this Board has repeatedly and consistently held that regardless of the State in which oil and gas are produced under

leases, the leases are, for Federal income-tax purposes, not sales of oil and gas in place, and that the amounts paid to the lessor, whether as royalties or as cash considerations or bonuses, are rentals taxable as income at the ordinary rates. *Nelson Land & Oil Co.*; 3 B. T. A. 315; *Henry L. Berg et al.*, 6 B. T. A. 1287; *John T. Burkett*, 7 B. T. A. 560; *R. H. Hazlett*, 10 B. T. A. 332; *James R. Parkey et al.*, 16 B. T. A. 441, and *Henry Harmel*, 19 B. T. A. 376. See also *Burkett* v. *Commissioner*, 31 Fed. (2d) 667. In each of these cases there is an exhaustive discussion of the question that we are now considering, the repetition of which is not necessary. We are of opinion that therein the rule has been correctly laid down and on their authority we hold that the royalties and cash considerations received by the petitioner for the leases on his farm are not capital gains within the meaning of the Revenue Acts of 1921 and 1924, but that they are rentals, taxable as income at the ordinary rates.

We now come to the petitioner's contention that the royalties and cash considerations received by him from the leases on the Archer County farm during the period January 1, 1922, to February 6, 1924, were community income. The petitioner admits that the Archer County farm is and was during that period his separate property, but he argues that if the receipts therefrom are to be considered as rentals for the purpose of the Federal income tax, they must also be considered as rentals for other purposes, and hence community property, although under the laws of Texas oil and gas leases constitute a sale of oil and gas in place. The petitioner's position is skillfully argued; nevertheless we think it is without merit and can not be maintained. We perceive no inconsistency in holding that for Federal income-tax purposes an oil and gas lease is not a sale of oil and gas in place, and that the proceeds from the lease are rentals taxable as income within the meaning of the Sixteenth Amendment and the revenue acts, and that for the purpose of determining whether such proceeds are separate or community property, the State law should be controlling. The one is a rule of taxation, the other a rule of property. Stating it in another way, the question in the first instance is whether certain receipts are income within the meaning of the Sixteenth Amendment and the laws of the United States, and in the second the question is as to whom did the receipts belong. As stated by the Circuit Court of Appeals for the Third Circuit in *Rosenberger* v. *McCaughn*, 25 Fed. (2d) 699; certiorari denied; 278 U. S. 67.

It is established beyond question that the law of the state in which property is situated governs federal courts in many things; in descent, alienation and transfer and the effect and construction of wills (*DeVaughn* v. *Hutchinson*, 165 U. S. 566, 17 S. Ct. 461, 41 L. Ed. 827) ; but whether it governs the federal government in the performance of its sovereign power to levy taxes is another question, and is the precise question here.

We are of opinion that in determining whether the royalties and cash considerations in question were community property, or the separate property of the petitioner, that is, whether they belonged half to the petitioner's wife or to him in their entirety, we must be governed by the laws of Texas.

In the case of *Stephens* v. *Stephens*, decided by the Court of Civil Appeals of Texas on March 16, 1927, and reported in 292 S. W. 290, one W. H. Stephens brought an action against his wife to secure a divorce. The wife filed an answer to the petition and also set up a cross action for divorce from Stephens and sought a decree adjudging certain property, including one-half of the oil royalties from leases on her husband's separate property, to be community property. After trial and judgment were had in the lower court, the case was taken to the Court of Civil Appeals for the State of Texas which, in holding that the oil royalties from leases on the husband's separate property did not constitute community property, said:

The land is separate property. The oil in place is realty capable of distinct ownership, severance, and sale. It is a part of the corpus of appellee's sole estate. He conveyed his oil and received, as the principal consideration therefor, one-eighth of the production. No skill, labor, or supervision of either of the spouses, and no community property was expended in the sale or production. The oil and the proceeds thereof received by appellee were neither rent nor profits, within the meaning of the law making such common property, but the consideration for separate realty. Extracting the oil from beneath the surface depletes and exhausts forever the corpus of his separate property; removing it to the top of the ground changes it from real to personal property; but such change or mutation, and the money received, are definitely traced, and, in our opinion, the fund in controversy belonged to appellee in his sole and separate right.

The petitioner further contends that the royalties and cash considerations in question are community income, because prior to the bringing in of the first oil well he had agreed with his wife that if they should get any oil from the farm, one-half of it should be hers and one-half his. This agreement was not in writing. However, assuming that it was sufficient to pass to the wife the right to one-half of the royalties and cash considerations which were paid to the petitioner, we still do not think it made any part of the royalties or other considerations income to her. This contention of the petitioner is effectively answered by the recent decision of the Supreme Court of the United States in the case of *Lucas* v. *Earl*, 281 U. S. 111. The facts in that case were that Earl and his wife, residents of California, in which the law of community property prevails, agreed that any property that they had, or might thereafter acquire in any way, either by earnings or under rights by contract or otherwise, during the existence of their marriage, should be treated, considered, held, taken and owned by them as joint ten-

ants with the right of survivorship. The question presented to the court was whether Earl could be taxed for the whole of certain salary and attorney fees earned by him in the years 1920 and 1921, or should be taxed for only a half of them, in view of the contract between him and his wife. The Commissioner and this Board imposed a tax upon the whole, but their decision was reversed by the Circuit Court of Appeals, 30 Fed. (2d) 898. A writ of certiorari was granted by the Supreme Court of the United States. The court, in holding that the whole of the salary and attorney's fees in question should be taxed to Earl, said:

A very forcible argument is presented to the effect that the statute seeks to tax only income beneficially received, and that taking the question more technically the salary and fees became the joint property of Earl and his wife on the very first instant on which they were received. We well might hesitate upon the latter proposition, because however the matter might stand between husband and wife he was the only party to the contracts by which the salary and fees were earned, and it is somewhat hard to say that the last step in the performance of those contracts could be taken by anyone but himself alone. But this case is not to be decided by attenuated subtleties. It turns on the import and reasonable construction of the taxing act. There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew.

We are of opinion that under the laws of Texas the royalties and cash considerations in question were the separate property of the petitioner and that they are taxable to him as his separate income.

The last contention of the petitioner is that he is entitled to the maximum earned-income credit of $10,000 for 1924 and $20,000 for 1925. This claim is made on the theory that the royalties and cash considerations which are the subject of this controversy should be attributed to the petitioner's personal services in leasing and managing the property. We find ourselves wholly unable to agree with the petitioner. It is difficult to understand how, after the leases had been made and the lessees had entered on to the property, the petitioner's activities could have any effect on the income. In our opinion the income was produced by the property, not by the petitioner's personal services. The evidence does not show that the petitioner is entitled to any larger earned-income credit than the respondent has allowed him.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

SEAWELL dissents.