Steve Lodzieski v. Commissioner.
Lodzieski v. Commissioner
Docket No. 3060.
United States Tax Court
1944 Tax Ct. Memo LEXIS 93; 3 T.C.M. (CCH) 1056; T.C.M. (RIA) 44326; October 6, 1944
*93 Harry Hemple, Esq., Detroit-Warren Road Bldg., Lakewood, O., and William H. Annat, Esq., for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves income tax deficiencies for the years 1940 and 1941 in the amounts of $1,110.81 and $1,934.24, respectively. There are three issues to be considered. The first is whether payments made by the petitioner in the sum of $3,900 in each year are deductible as rents under section 23 (a) of the Internal Revenue Code. Second, was petitioner's granddaughter his dependent within the meaning of section 25 (b) (2) of the Internal Revenue Code during the period October 1, 1940 to December 31, 1940, and the calendar year 1941? Third, is petitioner entitled to an earned income credit on that part of his income which was derived from the rentals of certain buildings? The case was submitted upon a stipulation of facts incorporating therein several exhibits, which we adopt as part of our findings of fact, and upon oral evidence. Findings of Fact Petitioner is an individual and during the years 1940 and 1941 resided in Lakewood, Ohio, and operated a business *94 under the name of Lakewood Bakery with its principal place of business at 11717 Detroit Avenue, Lakewood. Petitioner filed his income tax returns for the years 1940 and 1941 with the collector for the 18th district of Ohio. On June 30, 1920, Edward Rupp and his wife, Emma Rupp, of Lakewood, Ohio, were the owners of real estate situated at 11717 Detroit Avenue, Lakewood, and at that time entered into a 99-year lease covering these premises with Leonard S. Brooker of Cleveland, Ohio, commencing August 1, 1920 and ending July 31, 2019. This lease called for rental payments as follows: $3,900 annually for the first 5 years, $4,200 annually for the succeeding 10 years, and $4,500 annually for the balance of the lease. The lessee covenanted to erect buildings having a value of at least $40,000. The lease further gave the lessee an option to purchase the premises upon the payment of $70,000 if the option was exercised within the first 15 years of the term. Thereafter, the lessee was to have the option to purchase for $80,000. In April 1922, Leonard S. Brooker, as lessee, assigned all his right, title and interest in this lease to the petitioner with the consent of the lessors. Thereafter, *95 petitioner entered into possession of this real estate and in 1925 erected a building thereon and occupied a part of it as his principal office and place of business in connection with his bakery business. The balance of the building was sublet to other tenants. Edward Rupp died in 1938 and thereafter his widow, Emma Rupp, became the sole owner of this real estate. Sometime prior to January 2, 1940, petitioner commenced negotiations with Emma Rupp with a view to modifying or amending the 99-year lease. As a result of these negotiations, on January 2, 1940, the parties entered into an agreement referred to by the parties hereto as "Modification of the Lease." This instrument provided that the petitioner should pay to Emma Rupp as rent for the premises in lieu of the rent provided in the original 99-year lease, the sum of $3,900 per year for a period commencing January 1, 1940 and ending December 31, 1940. It further provided: "That in lieu of the purchase option given in said lease it is now agreed between the parties hereto that the Lessor shall sell and convey to the Lessee the said demised premises, and Lessee undertakes and agrees to purchase the said demised premises and to *96 pay the Lessor therefor the sum of $24,000.00 payable as follows: $15,000.00 payable in cash concurrently with the execution and delivery of this agreement. $9,000.00 payable in cash on December 31, 1949. "Concurrently with the execution and delivery of this agreement, and upon payment by Lessee of the said $15,000.00 installment of purchase price, Lessor shall execute and deliver properly executed deed of conveyance whereby the title to the demised premises is conveyed to The Land Title Guarantee and Trust Company of Cleveland, Ohio, Trustee * * *" It further provided that in the event of a default by the petitioner, the lessor, at her option, could "elect to declare all unpaid installments of the rentals provided for in this agreement, including also the $9,000.00 balance of purchase price, to be then iue and payable and may bring suit for the collection thereof and/or foreclosure or such other proceedings as she might under the circumstances have either in law or in equity." This agreement contained no provision that the annual payments of $3,900 were to be applied as a credit against the purchase price. Pursuant to this agreement petitioner paid to Emma Rupp the sum of $15,000. *97 On or about January 12, 1940, pursuant to the modification of the lease, Emma Rupp executed a deed conveying the property to the Land Title Guarantee and Trust Company of Cleveland, Ohio, as trustee. At the same time the Land Title Guarantee and Trust Company executed a trust agreement with petitioner and Emma Rupp. That instrument recited the execution of the agreement of January 2, 1940, the execution and delivery of the deed by Emma Rupp, and stated that "it has received and holds and will continue to hold the legal title to the above described premises in trust for the benefit of First Party [Mrs. Rupp] and second Party [petitioner] * * *." It further provided: "On December 31, 1949, or immediately succeeding that date, providing Second party [petitioner] exhibits to Third Party [Trust Company] satisfactory evidence of the fact that Second Party has paid to First Party [Mrs. Rupp] the purchase price of the demised premises as provided in said Modification of Lease Agreement, has paid to First Party all of the rentals for the period commencing January 1, 1940 and ending December 31, 1949, provided for in such Modification of Lease Agreement, * * * the Third Party shall thereupon *98 execute and deliver to Second Party a limited warranty deed * * * conveying to Second Party, or his designated grantee, the fee simple title to said premises, * * *" Early in 1940 petitioner's married daughter, Elizabeth Slivinski, and her 8-year old daughter, Christine Sivinski, came to live with him. Petitioner furnished them room and board and paid their doctor bills. On October 1, 1940, Elizabeth Slivinski went to work in petitioner's bakery at a salary of $25 weekly plus room and board for herself and daughter. Sometime in 1942 her salary was changed so that she received $50 weekly. Thereafter, she paid $25 weekly for room and board for herself and daughter From October 1, 1940 to December 31, 1941, the board and room furnished by petitioner to his daughter and granddaughter was not gratuitous but a part of the daughter's compensation for services rendered in connection with petitioner's bakery. Petitioner owned a building which was rented to various tenants and from whom he collected the rentals. Petitioner spent approximately 2 days a month in the collection of these rents, together with the rents from subtenants in the building at 11717 Detroit Avenue. He employed janitors *99 to do the necessary maintenance work on these buildings. With the exception of the time devoted to the collection of rents, petitioner devoted his entire working day to his bakery business which had eight branches and which had gross sales for the year 1940 of $153,176, and for 1941, $191,232.69. Opinion Three questions are raised by the pleadings. The first is whether the annual payments of $3,900 during the years in question made by the petitioner pursuant to the agreement of January 2, 1940, are deductible under section 23 (a) of the Internal Revenue Code. Petitioner argues that these payments are rents paid in connection with his business and as such deductible. Respondent contends that the petitioner is acquiring title to the property in question under the agreement of January 2, 1940, or in the alternative, that he has an equity in the property which precludes the deduction under this section. The pertinent provisions of the Internal Revenue Code are as follows: SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) In General. - All the ordinary and necessary expenses paid or incurred during the taxable *100 year in carrying on any trade or business, * * * and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. The terminology used by the parties in describing their relationship to one another in this agreement is not binding upon this Court. Though these payments be designated as rentals yet if in fact they are payments on the purchase price and the instrument is in substance a contract for deed, the contention of the respondent must be sustained. See Alexander W. Smith, Jr., Executor, 20 B.T.A. 27; Helser Machine & Marine Works, Inc., 39 B.T.A. 644; Robert A. Taft, 27 B.T.A. 808, and cases there cited. Likewise, if the petitioner has an equity in the real estate in question the contention of the respondent must be sustained. The salient provisions of the modification of lease agreement and the trust agreement are set out in the findings of fact and need not be repeated. The language of these instruments, coupled *101 with the execution of the deed by Emma Rupp and the payment of $15,000 on the purchase price, demonstrate clearly that it was the intention of the parties to set up a kind of escrow agreement, that the petitioner was in the process of acquiring title to this real estate and that the agreement of January 2, 1940, was in fact a contract for deed. See Alexander W. Smith, Jr., Executor, supra. Hence the petitioner is precluded from having a deduction under section 23 (a) of the $3,900 annual payments made to Emma Rupp in 1940 and 1941. The second question for consideration is whether Christina Slivinski was a dependent of the petitioner within the meaning of section 25 (b) (2) of the Internal Revenue Code during the period October 1, 1940 to December 31, 1941. Early in 1940 petitioner's daughter, Elizabeth Slivinski, and granddaughter, Christina Slivinski, came to make their home with petitioner. On October 1, 1940, Elizabeth went to work for petitioner in the bakery and has since been employed there. The respondent allowed petitioner's claim for the credit for dependency for the first 9 months of 1940 when Elizabeth was unemployed but disallowed the credit *102 for the balance of the year 1940 as well as the entire year 1941. This was done on the theory that petitioner was no longer the chief support of Christina and that the earnings of Elizabeth were so used. Petitioner contends that he was the chief support of Christina during this period and that Elizabeth made little or no contribution thereto. When Elizabeth Slivinski went to work for petitioner she received a salary of $25 a week. Petitioner's testimony, however, clearly indicates that in addition to the $25 a week paid during the period October 1, 1940 to December 31, 1941, she received as additional compensation room and board for herself and daughter. Petitioner testified and we quote: When that tax came in. This start involved in it, we given them free board and free rooming instead of pay. But, then, when the tax said that I have no claim on the daughter, we pay her the full wages, what she is supposed to get in the office, $50 a week. Sometime in 1942 the respondent questioned the dependency status of Christina. As a result Elizabeth's salary at the bakery was changed to $50 a week and she then paid to petitioner the sum of $25 a week for room and board for herself and daughter. *103 The only reasonable inference to be drawn from the testimony of the petitioner, and we have so found, is that the room and board furnished by the petitioner for Elizabeth and Christina during the period from October 1, 1940 to December 31, 1941, were not gratuitous but in fact compensation for Elizabeth's services. The respondent's determination in this respect must be sustained. The third point for consideration is whether or not respondent erred in eliminating the petitioner's earned income credit on that part of his income derived from the rents of two buildings. Pertinent provisions of the Internal Revenue Code are as follows: SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME. (a) Credits for Normal Tax Only. - There shall be allowed for the purpose of the normal tax, but not for surtax, the following credits against the net income: * * * * *
(4) Earned Income Definitions. - For the purposes of this section - (A) "Earned income" means wages, salaries, professional fees, and other amounts received as compensation for personal services actually rendered, but does not include any amount not included in gross income, nor that part of the compensation derived by the taxpayer *104 for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income producing factors, a reasonable allowance as compensation for the personal services actually rendered by the taxpayer, not in excess of 20 per centum of his share of the net profits of such trade or business, shall be considered as earned income. It is conceded by the respondent that there is a capital investment in the two buildings and the sole question for our determination is whether or not the services rendered by petitioner were a material factor in the production of income from this source. The position of the respondent seems to be that to entitle petitioner to credit under this section the services rendered must be substantial. Petitioner contends that so long as some services are performed, the amount of time spent in performing these services is immaterial. The evidence is not clear as to how much time petitioner actually spent in managing these properties. *105 He testified that he kept no separate record of that part of his time devoted to this purpose. He was asked how much time he spent in the bakery business and he stated, "Well, from the morning I get up until I go to sleep," and later he testified that he spent 2 days a month in collecting rents. Both parties cite the case of John W. Willmott, 2 T.C. 321, in support of their respective positions. In that case, however, the taxpayer devoted his entire time to the management of the properties owned by himself and his wife. In the case before us petitioner was engaged in the bakery business. The personal services rendered by him in connection with the management of his properties were small in the extreme when compared to the amount of time devoted to the bakery business, in W. P. Ferguson, 20 B.T.A. 130, (reversed on other grounds, 45 F.2d 573, we said: "* * * the income was produced by the property, not by the petitioner's personal services." The same can be said of this case. We do not think that the collection of rents requiring at best 2 days a month of petitioner's time is sufficient *106 to show that the petitioner's services were a material factor in the production of income from this source and that it could be fairly said that he rendered sufficient services in the managing of these properties so as to entitle him to a credit under this section. The record before us does not contain sufficient evidence to rebut the determination of the respondent. Decision will be entered for respondent.