Helen Lambert Norton v. Commissioner.
Norton v. Commissioner
Docket No. 85649.
United States Tax Court
T.C. Memo 1962-20; 1962 Tax Ct. Memo LEXIS 291; 21 T.C.M. (CCH) 92; T.C.M. (RIA) 62020; January 30, 1962
*291 1. Petitioner, in 1945, purchased a historic house known as the "General Wadsworth cottage" for restoration. She had business cards printed and designated her alleged business as "Lambert Studios," and after her name used the title of "Decorative Consultant." Petitioner paid $7,500 for said house and lot, and during the years 1945 through 1950, inclusive, she made certain improvements to the house and lot so that her cost basis for the property (not including land) was $32,182.65 on January 1, 1957. Petitioner has resided in said house from 1945 to the time of the instant trial. From January 1, 1950, to December 31, 1957, she had no receipts from Lambert Studios. On her income tax return for the taxable year 1957, petitioner claimed business expenses on Schedule C which were disallowed by respondent. Held: That the expenditures in question are not deductible as ordinary and necessary expenses paid or incurred during the taxable year 1957 in carrying on any trade or business under sec. 162 of the 1954 Code. Held, further: That real estate taxes and interest are allowable as deductions in determining net income. 2. During the taxable year 1957, petitioner received social security payments *292 totaling $483.60. For each of the years 1933 through 1940, inclusive, she earned in excess of $600. During 1953, she earned a salary of exactly $600 as a member of the Legislature of the State of Connecticut, and received dividends of $1,130.52. In 1955, she reported salary of $600 from the State Legislature, a long-term capital gain with respect to the Branford property, dividend income and interest income. During 1956, petitioner reported a net long-term capital gain from the sale of securities of $244.12. Held: That petitioner has failed to prove she earned income of more than $600 in each of ten previous calendar years before the taxable year 1957 and, hence, is not entitled to the retirement income credit under sec. 37(b) of the 1954 Code. Watson Washburn, Esq., 36 W. 44th St., New York, N. Y., for the petitioner. J. Frost Walker, Jr., Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined a deficiency in petitioner's income tax for the taxable year 1957 in the amount of $544.94. The issues to be decided are: (1) Whether, during the taxable year 1957, expenditures incident to restoration of a historic house were ordinary *293 and necessary expenses paid or incurred in carrying on a trade or business within the purview of section 162(a) of the Code of 1954; (2) whether real estate taxes on said property and interest were deductible in determining net income, and (3) whether petitioner received earned income of more than $600 in each of any ten previous calendar years before the taxable year 1957 within the meaning of section 37(b) of the 1954 Code. Findings of Fact Some of the facts have stipulated and are incorporated herein by this reference. Helen Lambert Norton, hereinafter sometimes called petitioner, a citizen of the United States and a resident of Durham Center, Connecticut, filed her Federal income tax return for the taxable year 1957 with the district director of internal revenue, Hartford, Connecticut. In 1933, petitioner was employed as an appraiser for inheritance tax purposes on a single assignment which took about two years to complete. Thereafter, she began to remodel old homes, joined the New York Real Estate Board, handled fire retarding alterations of tenements for several banks, and engaged in general construction work, first operating under the trade name of Lambert Studios and later *294 as the Cadley Construction Company. These business activities lasted from 1933 until the beginning of 1941, and her annual earnings during the years 1933 to 1940, inclusive, ranged from $4,000 to $7,000. In 1938 petitioner remarried, and in 1945 she was separated from her husband. She received a separation allowance of $300 a month. In addition to this monthly allowance she had at that time about $40,000 in marketable stocks and also an interest in a family corporation which paid her dividends of about $2,500 a year. After her separation she had "business cards" printed which referred to her alleged business as "Lambert Studios, Real Estate," and after her name there was the designation "Architectural & Building Contractor." These cards showed her address as Durham, Connecticut, where she lived in the spring of 1945. Petitioner also listed herself as a contractor and specialist in restoration of old houses in the classified directory of her local telephone books. In the fall of 1945, petitioner purchased the "General Wadsworth cottage" at Durham, Connecticut. She had business letterheads printed in that year with a picture of the General Wadsworth cottage at the top, and designated *295 herself thereon as "Specialist in Old Home Restorations." Also, she had new business cards printed giving her new address at Durham Center and designated her alleged business as "Lambert Studios, Estate Appraisals, Antiques," and after her name used the title of "Decorative Consultant." Petitioner paid $7,500 for said house and lot. During the years 1945 through 1950, inclusive, petitioner made certain improvements to the house and lot so that her cost basis for the house (not including land) was $32,182.65 on January 1, 1957. In 1947, petitioner also purchased land and a log cabin at Branford, Connecticut, for $20,050. Shortly thereafter she purchased the building known as the "Goodrich Homestead" (but not the land) for $5,000, and spent $1,039.30 in dismantling said building and storing it. In 1950 and 1951, she spent $2,905.58 in erecting a new house at Branford. In 1952 petitioner was elected to the State Legislature. In 1955 she sold her Branford property, including the new house thereon, together with the dismantled Goodrich Homestead, for $39,000, of which $20,000 was in the form of a purchase money mortgage. The sales expenses on said sale were $4,142.90. In addition, while *296 she owned said land, she paid $4,977.03 in carrying charges applicable to her cost basis. She made a net gain of $4,850.43 on which she paid income tax as capital gain. In 1952 the State of Connecticut passed a law requiring realtors to take out licenses and to bond themselves. In that year petitioner took out a license, secured a bond, and paid the license fees and bond premiums annually from that time through 1957. The cost of said fees and premiums in 1957 was $32.50. The General Wadsworth cottage became a show place for individuals and groups interested in restorations. Petitioner was a member of several organizations, such as the Landmark and Antiquarian Society in Connecticut, which were interested in restoring old homes. Petitioner has resided in the General Wadsworth cottage from the time of its acquisition to the time of the instant trial. Petitioner used part of the house to store the materials used in restoring the property. She performed some of the manual work herself. On Schedule C of her income tax return for the taxable year ended December 31, 1957, petitioner claimed business expenses respecting Lambert Studios as follows: Cost of labor
$1,119.00
Material and supplies
561.67
Interest on business indebted-
ness
471.22
Taxes on business and busi-
ness property
321.01
Depreciation
1,287.30
Telephone
105.91
Entertainment
243.79
Travel
60.00
Real estate license
15.00
Bond premium as realtor
17.50
Total
$4,202.40
*297 In addition, on Schedule C of her return for 1957, petitioner reported total receipts of Lambert Studios in the amount of $912.50. Said amount was, in fact, interest income received by petitioner on mortgage indebtedness of which she was the mortgagee. From January 1, 1950, to December 31, 1957, inclusive, petitioner had no receipts from Lambert Studios. Petitioner's husband (Norton) had been a broker for 40 years. At the time they were married in 1938 he traded entirely on his own account and they spent considerable time together discussing his trading. When they separated in 1945, petitioner had marketable securities of $40,000 and she employed her own broker. She studied market quotations, company financial statements, read the Wall Street Journal, and consulted her broker daily or weekly. Petitioner did not always follow her broker's advice. During the years 1946 through 1956, inclusive, petitioner realized capital gains from the sales of securities as follows: Number of
Gain or
Year
Sales
Loss
1946
12
+ $ 4,759.53
1947
11
+ 1,088.05
1948
8
+ 203.26
1949
2
- 051.86
1950
3
+ 407.15
1951
3
+ 1,692.37
1952
3
+ 1,078.54
1953
7
+ 1,130.52
1954
11
+ 2,051.19
1955
7
+ 3,079.67
1956
10
+ 244.12
Total
77 Total gain
$14,682.54
*298 Petitioner was a member of the Legislature of the State of Connecticut during the years 1953 and 1955, and during each of said years received a salary of $600. During 1957 petitioner received social security payments aggregating $483.60. Opinion Issue I. Petitioner contends that the amounts claimed as business expenses under Schedule C of her return for 1957 are deductible in computing her income tax for that year under section 162(a) [1] *299 of the 1954 Code. In essence, it is petitioner's position that she maintained the General Wadsworth cottage during the taxable year as a business headquarters for Lambert Studios to advertise herself as a specialist in restoration and decoration; that she looked to a possible profitable sale, and that her living on the premises was purely incidental to the business of its restoration and upkeep. Respondent, in opposition, maintains that the expenditures in question are not ordinary and necessary expenses; that petitioner was not carrying on any trade or business in 1957, and that the expenditures, therefore, are not deductible. Disallowance of the claimed deductions by respondent, of course, carries a presumption of correctness, and casts upon petitioner the burden of proving error. Henry P. White, 23 T.C. 90, 94 (1954), affd. per curiam 227 F. 2d 779 (C.A. 6, 1955). Whether the activities of a taxpayer constitute carrying on a trade or business within the intendment of the statute during the taxable year is primarily a question of fact. Morton v. Commissioner, 174 F. 2d 302-303 (C.A. 2, 1949), affirming a Memorandum Opinion of this Court. The record fails to establish that during the taxable year 1957 (or in any of the years after petitioner purchased the General Wadsworth cottage) the property had been held or converted to an income-producing purpose or that petitioner was, in 1957, carrying on an active real estate business, or an active business as a restorer or decorator of homes, or the business of renting properties, or any other business. Some mention is made of $2 admission fees charged to people who visited her home to study architectural phases or furnishings involved in old house restorations. *300 There is no affirmative evidence of any such charges in 1957 or in any other year involved, and no income therefrom was reported in her returns from 1954 to 1957, inclusive. Petitioner had no business receipts of any kind from Lambert Studios from 1950 through 1957. In this connection, on Schedule C for the taxable year 1957, petitioner reported the amount of $912.50 as total receipts from her business, "Lambert Studios." On cross-examination, however, petitioner admitted she had no receipts from Lambert Studios for 1957, and that said amount actually constituted interest income derived from a mortgage which should have been reported on page 3 of her return for that year. For the year 1956, petitioner reported $962.50 as gross receipts from Lambert Studios, which, like its counterpart for 1957, was actually interest income which she had received as a mortgagee. To return to the question of whether or not petitioner was carrying on any trade or business in 1957 to which the deductions claimed might be attributed, it is clear at the outset that petitioner was not engaged in the real estate business in any form. She received no brokerage commissions, rental or any other business income, *301 bought or sold no properties, and engaged in no like activities for profit. The only property with which she was concerned in that year was the General Wadsworth cottage. This she occupied herself, partly as a residence, partly as a workshop for repair and restoration of the same property and partly as a show place. As will be discussed later, she was not engaged, during that year, in the business of restoration or decoration. If she had received a satisfactory offer, she may well have sold the property, but she did nothing in the nature of carrying on a business to promote such a sale. The most that can be said in favor of her position is that she was preparing to engage in such a business in the future. This is not enough to put her in the real estate business. See James M. Osborn, 3 T.C. 603-604 (1944); Morton Frank, 20 T.C. 511, 513 (1953). As illustrative, though in a somewhat different factual setting, see Henry G. Owen, 23 T.C. 377, 381 (1954). The fact that petitioner sold the Branford property in 1955 does not help her here. The record, as far as it goes, (with the burden being on petitioner to prove the contrary) demonstrates that the sale was not made in the course of *302 carrying on a business. We have given consideration to the fact that she had a real estate license and filed a real estate operator's bond, but these facts fall short of demonstrating that she was actually in the real estate business. Much the same may be said about the claim that petitioner, in 1957, was in the business of restoration and decoration of old homes. We have no doubt that she spent time, effort and money in the restoration of the General Wadsworth cottage. But this was not done in the course of any going business. It was for her own home. She received no income from it and carried on no business in connection with it. It may well be that she intended to enter into the business of restoration in the future; that she was advertising her capacities; and that she believed she was creating valuable good will, but all of this was for a business to be begun at a later time. Although arising under different circumstances, the applicable principles are clearly expressed in Welch v. Helvering, 290 U.S. 111 (1933), in which the Supreme Court said in part (pp. 115-116): Reputation and learning are akin to capital assets, like the good will of an old partnership. Cf. Colony Coal and Coke Corp. v. Commissioner of Internal Revenue (C.A. 4th) 52 F. (2d) 923. *303 For many, they are the only tools with which to hew a pathway to success. The money spent in acquiring them is well and wisely spent. It is not an ordinary expense of the operation of a business. See also James M. Osborn, Morton Frank, and Henry G. Owen, all supra. There is no evidence in the record that petitioner was in any other activity which might be deemed the carrying on of a trade or business by her in 1957. Bearing in mind the conclusions reached to this point, we now consider the claimed deduction. It is stipulated that petitioner expended the items in question. We agree with respondent in disallowing all of the items in question except two. The items of cost of labor, material and supplies, depreciation, telephone, entertainment, real estate license and bond premium as realtor are not related to the carrying on of a trade or business (no such trade or business having been carried on), and there is no other basis upon which they may be deducted. The item of travel relates to petitioner's travel expense in consulting her attorney about income tax matters. We need not consider whether or not this was an ordinary and necessary expense because there was no business to which *304 it might be related. On proper proof, it might be allowable in connection with the preparation of petitioner's income tax return or for any other purpose allowable under section 212(3), but there is no evidence that the expenditure was in fact made in connection with the preparation of her return or "in connection with the determination, collection or refund of any tax." The consultation of an attorney concerning income tax matters may cover a wide field and may have no relationship to any of the factors above referred to. Cf Bonnyman v. United States, 156 F. Supp. 625 (1954), affd. per curiam 261 F. 2d 835 (C.A. 6). As to the two remaining items described as "Interest on business indebtedness ($471.22) and Taxes on business and business property ($321.01)," we take a different view. It is true in the light of our conclusions, supra, that they cannot be classified as business expenses and should not have been included in Schedule C of petitioner's return. Petitioner did not take the standard deduction on her return, however, and both items are deductible from adjusted gross income in determining net income. (See section 163 as to interest and section 164 as to taxes.) The taxes in *305 question were real estate taxes on the General Wadsworth cottage. The two items discussed in this paragraph, therefore, will be allowed as deductions. Issue II Petitioner contends that she received social security payments of $483.60 during the taxable year 1957, and that her retirement income tax credit was 20 percent of $1,200, minus $483.60, or $143.28. Respondent determined that petitioner did not receive earned income of more than $600 in each of ten previous calendar years before the taxable year 1957, and, hence, was not entitled to the retirement income credit under section 37(a) and (b) [2] *306 of the 1954 Code. We agree with respondent. The retirement tax credit, first introduced in the 1954 Code, is an attempt to place retired individuals receiving retirement pensions under publicly administered programs on an equal footing with those receiving tax-exempt social security benefits from the Federal Government. S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 8 (1954). For a discussion of the legislative history of section 37(b), supra, see 32 Taxes 721, "Taxation of Retirement Income." In order for an individual to qualify for the retirement income credit against his tax he must have received earned income in excess of $600 in each of any *307 ten calendar years (not necessarily consecutive) before the taxable year involved. Earned income for the purpose here in issue is defined in section 37(g) [3] as having the same meaning (with one exception not here material) as earned income which qualifies for the exclusion of income earned abroad under section 911(b) [4] *308 of the 1954 Code. In general, such earned income includes wages, salaries, professional fees, and other amounts received as compensation for personal services. See section 1.37-1, Income Tax Regs., for examples of the operation of the retirement income credit. Essentially, petitioner urges that her earnings from her contracting and real estate business for eight years from 1933 through 1940, inclusive, were never less than $4,000 a year; that in 1953 she earned a salary of $600 as a member of the Legislature of the State of Connecticut, and had in that year gains of $1,130.52 from the sale of stock as a trader in securities; that in 1955 she earned salary of $600 as a Connecticut State representative, $3,079.67 as a trader in securities, and realized a net profit of $4,850 from the sale of the "Branford Property;" and that in 1956 she earned *309 in excess of $600 as a trader in securities. Petitioner argues further that in the year 1956 she received over $900 in interest from the purchase money mortgage which she received from the sale of the Branford property, and that the net profit she realized therefrom was the result, in part, of her own supervision and physical work which entitled her to a reasonable allowance as compensation for the personal services rendered under section 37(g), supra. While we are satisfied from petitioner's testimony that she earned in excess of $600 during each of the eight years from 1933 through 1940, inclusive, she has not established that she earned the required amount in two additional years before the taxable year involved. Petitioner has not demonstrated that during 1956 she received any earned income as the term is defined in section 37(g). On her return for 1956, she reported a net long-term capital gain from the sale of securities of $244.12, and at the time said return was filed, she did not claim to be in the business of buying and selling securities. We think petitioner has failed to meet the burden of proving that she was a dealer, or that she was otherwise in the business of buying *310 and selling securities. The fact that she studied market conditions, had frequent consultations with her financial advisor, and made a profit from her securities transactions in every year but one from 1946 to 1956, inclusive, does not require a contrary conclusion. On her 1956 return, petitioner reported dividends in the amount of $3,743.24. Dividend income is clearly not to be taken as earned income within the ambit of the section 37(g), supra. Cf. John E. Greenawalt, 27 B.T.A. 936, 940 (1933). The only income which petitioner reported on her return for 1955, other than the $600 as salary from the State of Connecticut, is a long-term capital gain (from the sale of the Branford property), dividend income, and interest income. As to the reported gain from the Branford property, we have concluded under Issue I that the sale thereof was not an integral part of any real estate business conducted by her during 1955, and, hence, said profit is not attributable to her personal services in operating a business. With respect to the interest income received in 1955, petitioner urges that the interest should be attributed to her personal services rendered in developing the Branford property *311 before its sale under section 37(g), supra. We find no basis to support the view that the interest income is to be treated as earned income for purposes of the retirement income credit. See W. P. Ferguson, 20 B.T.A. 130, 135 (1930), affd. on this point, 45 F. 2d 573, 577 (C.A. 5, 1930). Likewise, the dividend income ($2,574.20) and the gains from the sale of securities ($3,079.67) earned in 1955 by petitioner do not qualify for the retirement income credit, since she was not a dealer in securities and, hence, is not entitled to a reasonable allowance as compensation for personal services rendered by her in handling her own affairs. See section 37(g), supra. With respect to the year 1953, petitioner earned salary in the precise amount of $600, and received gains from the sale of securities of $1,130.52. For the reasons discussed with respect to the years 1955 and 1956, the gains cannot qualify as earned income within the meaning of section 37(g). In view of the foregoing discussion, we hold that petitioner is not entitled to the retirement income credit during the taxable year 1957 within the purview of section 37(a) and (b), supra. Decision will be entered under Rule 50. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *↩
2. SEC. 37. RETIREMENT INCOME. (a) General Rule. - In the case of an individual who has received earned income before the beginning of the taxable year, there shall be allowed as a credit against the tax imposed by this chapter for the taxable year an amount equal to the amount received by such individual as retirement income (as defined in subsection (c) and as limited by subsection (d)), multiplied by the rate provided in section 1 for the first $2,000 of taxable income; but this credit shall not exceed such tax reduced by the credits allowable under section 32(2) (relating to the tax withheld at source on tax-free covenant bonds), section 33 (relating to foreign tax credit), section 34 (relating to credit for dividends received by individuals), and section 35 (relating to partially tax exempt interest). (b) Individual Who Has Received Earned Income. - For purposes of subsection (a), an individual shall be considered to have received earned income if he has received, in each of any 10 calendar years before the taxable year, earned income (as defined in subsection (g)), in excess of $600. * * *↩
3. (g) Earned Income Defined. - For purposes of subsections (b) and (d)(2), the term "earned income" has the meaning assigned to such term in section 911(b), except that such term does not include any amount received as a pension or annuity. * * *↩
4. SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. * * *
(b) Definition of Earned Income. - For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.